A. E. JORDAHL v. W. T. BERRY and Another.

April 29, 1898.

Nos. 10,965—(78).

72      119
s45LRA541n
52LRA894n
52LRA 897

**Physician—Action for Malpractice—Demurrer—Former Recovery for Services—Res Judicata.**

A judgment by default in action by a physician against his patient to recover for professional services is not a bar to an action by the patient against the physician for damages caused by malpractice in the performance of such services.

Appeal by defendants from an order of the district court for Rock county, P. E. Brown, J., sustaining the demurrers of plaintiff to the supplemental answers of defendants. Affirmed.

*A. J. Daley,* for appellants.

To every issue tendered in the complaint in an action the defendant is bound to interpose every matter of defense which he has, and a failure so to do is a waiver of it forever. Bazille v. Murray, 40 Minn. 48; Thompson v. Myrick, 24 Minn. 4. When considering the rules governing estoppel by judgment, a judgment by default is attended with the same legal consequences as if there had been a verdict for the plaintiff. Northern Trust Co. v. Crystal L. C. Assn., 67 Minn. 131. The plaintiff is estopped by the judgment against him in an action brought by defendant to recover compensation for services rendered in the same case. Gates v. Preston, 41 N. Y. 113; Blair v. Bartlett, 75 N. Y. 150; Dunham v. Bower, 77 N. Y. 76; 1 Her-

man, Est. § 235. The adjudication by a court of competent juris-
diction that the services rendered were of some value conclusively
establishes, between the parties, that the defendants were not
guilty of negligent and unskillful conduct in their employment.
New Orleans v. Citizens' Bank, 167 U. S. 371.

*L. S. Nelson,* for respondent.

The effect of a judgment cannot be extended or enlarged by ar-
gument or implication to matters, which, so far as the records show,
were not actually heard and determined. Ihmsen v. Ormsby, 32
Pa. St. 198. The better rule, and the only reasonable doctrine, is
that plaintiff's claim for damages resulting from malpractice con-
stitutes a separate and independent cause of action which he can
enforce without disturbing any matter litigated in the defendant's
action for services. Ressequie v. Byers, 52 Wis. 650; Whitesell v.
Hill, 101 Iowa, 629; Lawson v. Conaway, 37 W. Va. 159; 2 Black,
Judgm. § 769; O'Connor v. Varney, 10 Gray, 231; Bascom v. Man-
ning, 52 N. H. 132; Barker v. Cleveland, 19 Mich. 230. If plaintiff
in this suit had set up the defense of malpractice in the action be-
fore the justice, an adjudication upon that issue would then have
been a bar. Howell v. Goodrich, 69 Ill. 556.

MITCHELL, J.

This was an action to recover $5,000 damages for malpractice by
the defendants in the performance for plaintiff of professional serv-
ices as physicians and surgeons. After the action was commenced
and at issue, each of the defendants brought an action against the
plaintiff, in justice's court, to recover the value of his services, al-
leged in one case to be some $22, and in the other $7. The present
plaintiff neither answered nor appeared in those actions, and the
present defendants, respectively, recovered judgment for the full
amounts claimed. They then set up these judgments, by supple-
mental answers, as a bar or estoppel to plaintiff's recovery in this
action. The plaintiff demurred on the ground that the answers did
not state facts constituting a defense. From an order sustaining
the demurrers, the defendants appealed.

While the doctrine of estoppel by a former adjudication is as old
as the law, few questions have given rise of late years to more dis-

cussion and conflict of opinion than the applicability of the doctrine to a state of facts the same or similar to that presented by this case.

In Bellinger v. Craigue, 31 Barb. 534; Gates v. Preston, 41 N. Y. 113, and Blair v. Bartlett, 75 N. Y. 150, it was held that a judgment in justice's court in favor of a surgeon for professional services was a bar to any action against him for malpractice in the performance of such services. In the first and last of these cases the defendants appeared and answered, but afterwards withdrew their answers. In the other the defendant did not answer, but consented in writing to the entry of the judgment. We do not refer to this as distinguishing in principle those cases from the present, but it may have had some influence upon their decision. See Bascom v. Manning, 52 N. H. 132. Neither do we lay any stress on the fact that an action for services is brought in justice's court, except so far as it illustrates the inconvenience and practical injustice of what we may call the New York doctrine. In Dunham v. Bower, 77 N. Y. 76, the court applied the same rule to a state of facts not differing in principle.

A directly opposite conclusion was arrived at upon the same state of facts in Ressequie v. Byers, 52 Wis. 650, 9 N. W. 779; Lawson v. Conaway, 37 W. Va. 159, 16 S. E. 564; Goble v. Dillon, 86 Ind. 327; and Sykes v. Bonner, 1 Cin. R. 464,—in most of which cases the courts reviewed the New York cases, and refused to follow them.

This conflict of opinion among the courts gave rise to an extended and somewhat energetic dispute among text writers.

Mr. Bigelow discusses the subject at some length, and earnestly insists that the New York doctrine is wrong. Bigelow, Estop. (5th Ed.) 174 et seq. Mr. Van Fleet takes the same side of the question. Van Fleet, Former Adj. § 168 et seq. Mr. Black, while not discussing the matter at any great length, indorses the doctrine opposed to that of New York, as being much better supported by legal reason, and the best considerations of convenience and justice. 2 Black, Judgm. § 769. Mr. Browne, in his note to Ressequie v. Byers, supra, in 38 Am. Rep. 778, says, of the New York doctrine, that, while unquestionably right in theory, it may well be doubted whether it is convenient or safe in practice; that such estoppels are

odious at best, and are founded on a technicality, and probably promote more injustice than they prevent.

On the other side, Mr. Herman urges with great earnestness that the New York doctrine is sound, and that the courts which have come to an opposite conclusion violate every principle upon which the doctrine of res adjudicata is founded. Herman, Estop. § 231 et seq. We do not find that Mr. Freeman, in his work on Judgments, anywhere discusses this precise question; but in view of the fact that, in support of certain general propositions laid down in his text, he cites the New York cases without any intimation of disapproval, it may perhaps be inferred that he approves of their doctrine. See Freeman, Judgm. § 282.

On this state of the authorities, we feel at liberty to adopt whichever rule (permissible on principle) we think the safest, most convenient and equitable in practice; keeping in mind that it is more important to work practical justice than to preserve the logical symmetry of a rule, provided this can be done without destroying all rules, and leaving the law on the subject all at sea.

The foundation principle upon which the doctrine of res adjudicata rests is that parties ought not to be permitted to litigate the same issue more than once; that, when a right or fact has been judicially tried and determined by a court of competent jurisdiction, the judgment thereon, so long as it remains unreversed, shall be conclusive upon the parties, and those in privity with them in law or estate. Rightly understood, no doctrine of the law is more in accord with justice and public policy. The difficulty which has always confronted the courts is to determine the extent of the application of that doctrine. Where an issue has been actually litigated and determined on its merits, there can be no doubt, upon either reason or authority, that the judgment is, as between the parties and their privies, conclusive in relation to that point in any other suit, though the purpose and subject-matter of the two suits be different. The difficulty is to determine what points were in issue and determined by the judgment, or, rather, what issues were necessarily involved in the judgment, although not directly and expressly made and litigated.

The American authorities seem to have generally gone somewhat

further in applying the doctrine of res adjudicata in that respect than the English courts, whose general tendency is to confine the estoppel of a judgment to matters actually disputed.

Looking at the subject from a practical standpoint, there is certainly great danger of working injustice, unless great caution is used, in holding that a judgment is an estoppel upon a certain point, on the ground that it was necessarily involved in the judgment, although the issue was not expressly tendered and litigated. Frequently one learned in the law can reason out, to his satisfaction, that a particular point was necessarily involved in a judgment, when such a thing would never occur to the ordinary layman. The present case is an illustration of the fact. Whatever conclusion hard logic would require, every one knows that, as a matter of fact, the question of defendants' malpractice was not determined in their suits for services, and that the judgments were in fact for the value of the services, irrespective of, and disconnected from, any claim for malpractice.

The inconvenience of the New York rule, and its liability to work injustice, is further illustrated by the present case. It furnishes an opportunity to create an estoppel by what may not unfairly be called a snap judgment. It is perhaps not uncharitable to surmise that this may have been the very object of defendants in bringing their actions in justice court. But, this aside, if plaintiff had appeared and defended those actions, he would have been put to the alternative of alleging the malpractice as a mere defense, or of setting it up as a cross claim. In either case the judgment would be a bar or estoppel on that issue. If he had adopted the latter course, he could only have recovered $100, the limit of the justice's jurisdiction, and could never have recovered any more in another suit, because he would not be allowed to split a single cause of action. On the other hand, had he set up the malpractice merely as a defense, and the claims of the defendants for services were less than $15, the issue, involving a claim of $5,000, would have been conclusively determined by the judgment of the justice, from which neither party could appeal on facts. We concede that such considerations are not, in themselves, of any force, except as illustrating the inconvenience of such a rule; but where it is open to the

court, upon principle, to choose between two rules, they are entitled to weight.

After starting out with the conceded proposition that a judgment is conclusive of every fact necessary to uphold it, whether the final determination is the result of litigation, or of a default of one of the parties, the reasoning of those who advocate the New York doctrine may be all summed up as follows: If the services were of value, they could not have been useless; and, if of use, they could not have been harmful; and, if not harmful, there could not have been malpractice in the performance of them; therefore a judgment that the services were of value necessarily involved a determination that they were properly performed; and that such an adjudication is necessarily inconsistent with the existence of a claim by the patient for damages for malpractice in their performance. See Blair v. Bartlett, supra, and Dunham v. Bower, supra.

We cannot avoid feeling that this line of reasoning is more technical and theoretical than practical. And, even if technically sound, the doctrine of many of the adjudicated cases certainly does not conform to it, as is illustrated in numerous suits between vendor and vendee and employer and employee. The decisions are too numerous to require citation, to the effect that in the case of a sale of personal property, with a warranty of its quality, a judgment in favor of the vendor for the purchase money (the breach of warranty not having been interposed by way of defense or counterclaim) is no bar to an action by the vendor for damages for breach of the warranty. We fail to see why the reasoning adopted in favor of the New York doctrine is not equally applicable to such a case; for, if the property was not as warranted, the contract was broken, and the vendor was never entitled to the full purchase price. It is no sufficient answer to say that the warranty was itself a contract collateral to the contract of sale. There is but one contract, and the warranty is one of its terms, and not a separate and independent contract. Thompson v. Libby, 34 Minn. 374, 26 N. W. 1.

There are also numerous cases holding that a recovery by an employee on a complaint for services rendered will not estop the defendant employer from recovering damages sustained by him through

the negligent or unskillful performance of such services; such negligent acts not having been set up or litigated in the action for the services. The following are a few of the many cases which might be cited to that effect: Mondel v. Steel, 8 M. & W. 858; Rigge v. Burbidge, 15 M. & W. 598; Davis v. Hedges, L. R. 6 Q. B. 687; Davenport v. Hubbard, 46 Vt. 200; Mimnaugh v. Partlin, 67 Mich. 391, 34 N. W. 717; Robinson v. Crowninshield, 1 N. H. 76. Mr. Freeman himself lays down this doctrine, and cites some of those cases in its support. Freeman, Judgm. § 282.

In Schwinger v. Raymond, 83 N. Y. 192, the New York court of appeals held the same thing. It is true, the court attempted to distinguish that case from Dunham v. Bower, supra, on the ground that in the latter the carrier had never performed his contract by transporting and delivering the goods, which were wholly destroyed en route, while in the former the carrier had performed by transporting and delivering the goods, which were only damaged en route. But it is respectfully suggested that the distinction is untenable on principle. In both cases the contract was safely to carry and deliver the property, and in neither was the contract performed. The difference in breach was one of degree merely.

The reasoning adopted in support of the New York doctrine is equally applicable to all these cases; for it could be argued that an adjudication that the employee was entitled to recover for his services necessarily implied that he had performed them properly, and according to the contract, which would be inconsistent with the existence of a claim in favor of the employer for damages for the improper or negligent performance of the services.

The reasoning usually adopted in opposition to the New York doctrine is substantially as follows: That negligence or want of skill in the performance of services, resulting in damages to the employer, creates an affirmative cause of action in his favor, the moment the negligent or unskillful act is committed; that this cause of action, like every other one, carries with it the right of the party to sue on it and put it into judgment in his own way; that one cause of action cannot, in and of itself, when merged in judgment, carry with it another cause of action, however closely the two may be connected; that, where a defendant has a cross claim,

he may set it up as a defense or counterclaim, but is not bound to do so, although the two causes of action grow out of the same contract.

It would be impracticable, as well as unsafe, to define the precise limits of this doctrine, or to lay down any rule of universal application; but, as applied to the present case (which was one in tort, arising on contract), and others ·strictly analogous; we have concluded that this doctrine is permissible on principle, and much the safer, more convenient, and more equitable in practice.

Order affirmed.