# LUDWIG LUEBKE AND ANOTHER v. J. I. CASE THRESH-ING MACHINE COMPANY.[1]

June 21, 1929.

No. 27,362.

[1]Reported in 226 N. W. 415.

*Kenny & Gardner* and *Clifford W. Gardner,* for appellant.
*Eriksson & Zumwinkle* and *Harold Ranstad,* for respondents.

STONE, J.

Action for deceit in which plaintiffs, husband and wife, had a verdict for $6,500. Defendant appeals from the order denying its alternative motion for judgment notwithstanding or a new trial.

Plaintiff Ludwig Luebke at the time of the trial was 63 and his wife, plaintiff Anna Luebke, 54 years of age. They are farmers who formerly lived in Otter Tail county in this state but in 1923 had moved onto an 80-acre farm which they owned near Arcadia, Wisconsin. Their adult son, Frank, lived with them. This action arises out of what in form is a contract for the purchase by the three of them, father, mother and son, of a complete threshing outfit, separator, wind stacker, feeder and a 65-horsepower steam tractor, for the stated price of $4,970. The written contract of May 23, 1923, called for the delivery of the outfit at Fergus Falls, Minnesota, on or before July 10, 1923. The plan was that it would be operated there by the son, Frank. He did finally take delivery and ran the machine in the vicinity of Fergus Falls during the threshing seasons of 1923 and 1924. The testimony is voluminous, and we shall make no attempt to state both sides of it. That for plaintiffs is of such character that, on the controlling issue of fraud, it so far supports the verdict that there was no abuse of discretion in denying a new trial.

The theory of the case for plaintiffs, who deny their ability to read English, is that one Vogel, local agent for defendant at Arcadia, Wisconsin, another representative of defendant, a traveling salesman by the name of Haller, and one Danuser, a real estate broker at Arcadia, co-operated in procuring the signature of the Luebkes to the order for the threshing machine. At the outset Danuser may not have had much to do with it. Haller is chiefly accused of engineering the deal. The evidence for plaintiffs is that

they did not want to *purchase* the machine and never in fact agreed to do so but that they were willing to *trade* their 80-acre farm (subject to an $800 mortgage) near Arcadia, upon which they were then living, for the machine, and that that was the agreement and the only one they ever made with Haller and Vogel. Their claim is that they signed the contract upon the representations of Haller that it was one for the trade of the farm for the machine and that it correctly expressed their agreement, orally reached, to that effect. Neither Haller, Vogel nor Danuser were called as witnesses.

According to the contract, the purchase price was payable in two notes, one for $300, due September 15, 1923, and one for $4,670, due November 1, 1923. They were to be secured by a first mortgage on the machinery with its earnings and also on the 80-acre farm of plaintiffs. Upon receipt of the order by defendant it required additional security, and the matter went back to its representative Haller, who procured an assignment from plaintiffs of a $2,000 purchase money mortgage which they happened to own and which was a lien upon the farm in Otter Tail county, Minnesota, which they had sold to one Rocholl, who was the mortgagor. Haller procured this additional security upon the false representations, as testified to for plaintiffs, that the assignment of the mortgage was wanted by the company only for the purpose of assuring them that plaintiffs would not "back out;" would accept the machine when it was shipped; and that defendant would be safe in shipping it to Fergus Falls. We do not follow the details of the testimony as to this or the other alleged misrepresentations of Haller upon which plaintiffs rely. In substance, the evidence is that all of the many signatures in the matter, including those on the mortgage of the Arcadia farm, were procured by fraud and artifice intended to deceive and actually deceiving plaintiffs as to the nature of the instruments signed, all of which plaintiffs were fraudulently led to believe were necessary and proper to effectuate the intended trade of their farm for the machinery. However the fact issue may be argued for defendant, the fact remains that there is such an issue, upon which the verdict of the jury is final. To follow the evidence further in its ramifications would serve no useful purpose.

Much of the argument for defendant requires only passing comment. In that class is the suggestion that simply because plaintiff Ludwig Luebke was not a witness at the trial there was no proof of the fraud as to him and so there should have been a directed verdict against him. It is made to appear that he depended in the transaction upon his wife and son, particularly upon the former, and that if she was deceived her husband was also. Then there is the argument that the son, Frank Luebke, was a partner and that he could not have been deceived, as plaintiffs, his parents, claim they were. There again the conclusion assigned does not follow. The evidence is sufficient, if believed, as it was by the jury, to permit the conclusion that the son, Frank, until some time after the contract was signed, was just as much deceived as his parents. Touching upon the claim that Frank, because of a partnership or joint adventure, was the agent for his parents, these plaintiffs, it is noted that defendant's agent Haller, when the deal was made, did not consider it in that light. He transmitted the "order" to defendant as that of Frank Luebke with payment "guaranteed by the father and mother of said purchaser and H. R. Vogel, dealer, Arcadia, Wisc." In this connection there is among the exhibits a telegram of July 28, 1923, from Frank Luebke at Fergus Falls to Vogel at Arcadia, reading thus:

"Bill lading received with real estate and chattel mortgage attached. Do not understand this deal. We traded farm for machine and I refuse to sign mortgage."

The answer came, not from Vogel, but from Danuser, who assures Frank thus:

"Everything O. K. Examined papers and Vogel stands good for everything as per our agreement. Will write you letter and explain everything. Sign papers and unload at once."

(What Danuser's explanation was, if in the record, has not been brought to our notice.) This leads to another of the miscellaneous, unsupported or, at best, inconclusive claims for defendant. It is that Danuser was the agent of plaintiffs. The evidence is such that

on the contrary the jury could have inferred that Danuser was a sort of handy man in the transaction and a tool in the hands of Haller and Vogel, used because of his influence with plaintiffs. Of course plaintiffs were negligent. But, assuming fraud upon them, their want of due care does not as matter of law destroy their case. Maxfield v. Schwartz, 45 Minn. 150, 47 N. W. 448, 10 L. R. A. 606.

■ Defendant's mortgage on the Arcadia farm it foreclosed by action. The judgment was not pleaded as a bar in this action. Defendant also procured the Rocholl purchase money mortgage on the farm formerly owned by plaintiffs in Otter Tail county. Both have been lost to plaintiffs, and the verdict of the jury reflects their value. Defendant in December, 1924, took the threshing outfit by replevin. Issue was joined and the present plaintiffs, as replevin defendants, tendered the same issue of fraud they do here. It was tried to a verdict in their favor, which was set aside upon the motion of defendant, plaintiff in the replevin action, for judgment notwithstanding or a new trial. Judgment was ordered for defendant for the possession of the machinery. The decision, in a memorandum accompanying it, is explained by the trial judge (Honorable William L. Parsons) as follows:

"Further consideration of the situation disclosed at the trial has led to the conclusion that there is no theory upon which the defendants may successfully assert a right to the possession of the threshing rig in controversy.

"The foundation of their claim is an alleged contract for exchange of their farm for a threshing rig. While the details of the asserted understanding were received as bearing upon defendants' claim of fraudulent representations, the agreement for the exchange of property, if there was one, was manifestly invalid and nonenforceable and could not serve as the basis of a right of possession.

"I do not see how another trial could substantially alter the situation."

There is no estoppel here by the judgment or verdict in the replevin case. The judgment itself is not a judicial negation of the claim now put forward by plaintiffs. It does not necessarily nega-

tive the existence of plaintiffs' affirmative cause of action against defendant. Jordahl v. Berry, 72 Minn. 119, 75 N. W. 10, 45 L. R. A. 541, 71 A. S. R. 469. It did not necessarily settle any issue other than the right of possession. Going into the record for the purpose of ascertaining what basis, if any, there is for defendant's claim of estoppel by verdict, we find not only that the verdict was in favor of the present plaintiffs but also that the final decision for defendant was based exclusively on another ground. The estoppel of a verdict or decision operates only on those issues which were actually litigated and decided in the former action. It does not affect issues which might have been but were not litigated and decided therein. See Gustafson v. Gustafson, 178 Minn. 1, 226 N. W. 412, and cases cited.

■ Another claim for defendant is that it was not bound by any representations made by Vogel and Haller in order to procure plaintiffs' signatures to the order. The sufficient answer to that is that the contract was procured by Vogel and Haller, and upon the issue of fraud defendant took it subject to any vices with which their conduct contaminated it. Roseberry v. Hart-Parr Co. 145 Minn. 142, 176 N. W. 175.

■ Another assignment of error goes to the absence of proof that plaintiff Ludwig Luebke owned the farm in Wisconsin. But defendant has gotten the farm by foreclosure of the mortgage from plaintiffs and does not seem to question the quality of the title so derived. Furthermore, it was a basic assumption of the whole case that the farm was owned by plaintiffs and that it did not matter which one of them happened to have title. That was the theory of the trial and of the charge. The point was not raised below and it is too late to make it here.

■ The assignments of error directed to rulings upon evidence present no prejudicial error. There was no abuse of discretion in any of them. One of them is based upon the exclusion of evidence that it was the invariable custom and rule of defendant not to exchange its machines for land. That evidence, if it had been admitted, might have been a two-edged weapon, as hurtful to defend-

ant as to plaintiffs. Upon the face of the contract, as it was accepted by defendant, there was no trade of machinery for land. So had the evidence been in, the argument for plaintiffs might have been that, knowing that plaintiffs would do nothing but trade and defendant nothing but sell, defendant's agents resorted to the artifice charged to them in order to get the deal by both parties, trusting in their ability, once the machinery was delivered, to make it stand in some form. But that aside, the proffered evidence was collateral. The admission of such evidence on collateral issues is within the discretion of the trial judge. Glassberg v. Olson, 89 Minn. 195, 94 N. W. 554.

The assignments of error directed to the instructions, both those given and those refused, require no discussion. The charge fairly presented the issues and the claims of the litigants. While the trial judge referred to Haller and Vogel as the agents of defendant, he told the jury he did it as a convenient method of designation and cautioned them not to draw from it any inference adverse to defendant.

It is provided by rule VIII, subd. 3, of this court that "all references [in the briefs] to evidence shall distinctly point to the folio and page of the settled case or printed record where the same may be found." The brief for defendant shows such ignorance or wilful disregard of this rule that it cannot go unnoticed. There are many pages of argument based upon evidence and asserting, without much attempt by reasoning to justify it, that a stated conclusion follows. Yet that written argument, contrary to the rule, is almost barren of reference to the evidence by page or folio. Our rules in that regard have been so flagrantly violated that were the appellant the successful party, we would probably refuse to tax the cost of printing the brief or allow statutory costs in its favor. Inasmuch as it is not the prevailing party, the violation of the rule cannot be so dealt with. But in the interest of good practice it ought not to be passed in silence; hence this comment.

Order affirmed.

DIBELL, J. took no part.