Stanley McDONALD, Norman R. Hagfors and Clayton Jensen, Appellees,

v.

JOHNSON & JOHNSON, Appellant.

No. 85–5117.

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 11, 1985.

Decided Nov. 6, 1985.

Rehearing and Rehearing En Banc Denied Dec. 23, 1985.

Charles Quaintance, Jr., Minneapolis, Minn., for appellant.

Daniel R. Shulman, Minneapolis, Minn., and Joseph Alioto, San Francisco, Cal., for appellees.

Before LAY, Chief Judge, HEANEY and FAGG, Circuit Judges.

LAY, Chief Judge.

Johnson & Johnson brings this interlocutory appeal under 28 U.S.C.A. § 1292(b) (West Supp.1985), challenging the district court's ruling that the payment and satisfaction of a judgment in a breach of contract action does not bar an action for fraud in the inducement of the contract arising under the same operative facts. In an earlier opinion, *McDonald v. Johnson & Johnson*, 722 F.2d 1370 (8th Cir.1983), *as modified by* 722 F.2d 1388, *cert. denied*, — U.S. —, 105 S.Ct. 219, 83 L.Ed.2d 149 (1984), we sustained damages received by plaintiffs for breach of contract ($5.7 million) and for fraud ($6.275 million) but reversed a judgment for $25 million in punitive damages and granted a new trial as to those damages. Johnson & Johnson moved for a rehearing and after further review this court vacated the fraud award and remanded the entire fraud claim for a new trial, reasoning that the punitive damages issue was intertwined with the substantive merits of the fraud claim. *McDonald v. Johnson & Johnson*, 722 F.2d 1388, 1388–89 (8th Cir.), *cert. denied*, — U.S. —, 105 S.Ct. 219, 83 L.Ed.2d 149 (1984). After plaintiffs collected on their contract judgment, Johnson & Johnson moved to bar the retrial of plaintiffs' fraud claim on the ground that the substantive merits of the fraud action were now merged in the contract judgment. We find such an assertion bordering on the frivolous. We therefore affirm the denial of Johnson & Johnson's motion for summary judgment and direct the parties to proceed to trial on plaintiffs' fraud claim.

## Facts

Stanley McDonald, Norman Hagfors, and Clayton Jensen (the plaintiffs) are the former owners of StimTech, a corporation that manufactures a painkilling device called TENS.[1] After acquiring 37.1% of StimTech's stock in 1973, Johnson & Johnson purchased the remaining StimTech stock in 1974, making StimTech a wholly-owned subsidiary. The 1974 acquisition agreement provided, among other things, that Johnson & Johnson would pay plaintiffs a minimum of $1.3 million and a maximum of $7 million for the remaining StimTech stock based on the amount of StimTech's profits during a five-year earnings period from 1975 to 1979.

On May 2, 1979, plaintiffs filed suit against Johnson & Johnson, alleging breach of contract, fraud, and violations of the Sherman and Clayton Acts. The plaintiffs alleged that Johnson & Johnson acquired StimTech in order to prevent the TENS devise from competing with Tylenol and other painkilling drugs manufactured by Johnson & Johnson subsidiaries. To induce plaintiffs to sell StimTech, plaintiffs alleged, Johnson & Johnson made several

---

1. "TENS" is the abbreviation for transcutaneous electronic nerve stimulator. The device is used to treat pain by sending electric currents into the body through electrodes attached at the site of the pain.

promises to the plaintiffs that it never intended to fulfill, such as promising to put the full resources of Johnson & Johnson behind StimTech. The plaintiffs further alleged that these promises were in fact never fulfilled.

After an extended trial, the jury returned a verdict against Johnson & Johnson on all counts except the Clayton Act violation. On appeal, we reversed the antitrust judgment for lack of standing, remanded the fraud claim, and affirmed the $5.7 million breach of contract award. *McDonald v. Johnson & Johnson,* 722 F.2d 1370 (8th Cir.1983), *as modified by* 722 F.2d 1390, *cert. denied,* —— U.S. ——, 105 S.Ct. 219, 83 L.Ed.2d 149 (1984).

Before retrial of the fraud claim, plaintiffs sought to collect on their contract judgment. Because the parties disagreed over whether plaintiffs' collection of the contract judgment would extinguish plaintiffs' alternative fraud claim, plaintiffs made a motion for clarification. After a hearing, the district court, Judge Miles W. Lord presiding, entered an order stating that plaintiffs would not waive or extinguish their right to proceed on the fraud claim by collecting on the contract judgment. Plaintiffs then demanded and received payment of the $5.7 million contract verdict. Johnson & Johnson thereafter moved for summary judgment on the fraud claim, asserting that collection of the contract judgment either constituted an election of remedies or precluded the fraud claim under the doctrine of res judicata. The district court, Judge Donald D. Alsop [2] presiding, denied Johnson & Johnson's motion and certified the issue for appeal.

## Discussion

Whether collection of plaintiffs' breach of contract judgment precludes relitigation of plaintiffs' fraud claim turns on whether the contract and fraud claims represent one cause of action with multiple theories of recovery or two distinct causes of action. *See Lawlor v. National Screen Service Corp.,* 349 U.S. 322, 326, 75 S.Ct. 865, 867, 99 L.Ed. 1122 (1955); *accord Youngstown*

*Mines Corp. v. Prout,* 266 Minn. 450, 466, 124 N.W.2d 328, 340 (1963). Johnson & Johnson argues that plaintiffs present only one cause of action with alternative theories of recovery, relying on *United States v. Temple,* 299 F.2d 30 (7th Cir.1962) (default judgment in favor of the government on notes issued for government loans precluded the government's subsequent suit under the False Claims Act based on the borrowers' fraudulent statements). Johnson & Johnson argues here that, because the same evidence supports plaintiffs' contract and fraud claims and because plaintiffs admitted that the case involves "a single course of conduct causing a single injury," plaintiffs claims are merged and their fraud claim is thus barred by collection of the contract judgment. We disagree.

In our earlier opinion we observed that, although the plaintiffs presented breach of contract and fraud claims, "any recovery in the new trial for fraud in terms of compensatory damages must be discounted by the breach of contract damage award." *McDonald,* 722 F.2d at 1389. This statement is far removed, however, from Johnson & Johnson's contention here that judgment on plaintiffs' breach of contract claim bars a trial on their fraud claim.

No policy inherent in res judicata principles is at stake. Plaintiffs consolidated these various counts, including the antitrust claims, in the same case and tried them at the same time. It was only at Johnson & Johnson's urging on appeal that we separated plaintiffs' claims, affirming the breach of contract judgment and remanding the fraud claim. We find it fundamentally inconsistent for Johnson & Johnson to now urge that plaintiffs should be barred from pursuing their fraud claim merely because plaintiffs have proceeded in accordance with this court's grant of Johnson & Johnson's motion.

More significantly, Johnson & Johnson's present argument is not supported by the law. As the parties recognize, res judicata

---

**2.** The case was assigned to Judge Alsop after Judge Lord disqualified himself.

is an issue of substantive law requiring the application of state law in diversity actions. *Kuehn v. Garcia,* 608 F.2d 1143, 1147 (8th Cir.1979), *cert. denied,* 445 U.S. 943, 100 S.Ct. 1340, 63 L.Ed.2d 777 (1980). The Minnesota Supreme Court has recited several tests for determining whether two claims constitute a single cause of action, such as whether claims involve the same set of factual circumstances, *Hauser v. Mealey,* 263 N.W.2d 803, 807 (Minn.1978), or whether the same evidence supports both claims, *McMenomy v. Ryden,* 276 Minn. 55, 58, 148 N.W.2d 804, 807 (1967). Despite these various formulations, courts agree that fraud in inducing a contract and a later breach of that contract represent two distinct causes of action under Minnesota law.[3] *See, e.g., E.H. Boerth Co. v. LAD Properties,* 82 F.R.D. 635, 646 (D.Minn.1979) (applying Minnesota law); *Clements Auto Co. v. Service Bureau Corp.,* 298 F.Supp. 115, 139–40 (D.Minn. 1969) (applying Minnesota law), *rev'd in part on other grounds,* 444 F.2d 169 (8th Cir.1971); *Woodman v. Blue Grass Land Co.,* 98 Minn. 87, 88, 107 N.W. 1052, 1052–53 (1906); *cf. Barr/Nelson, Inc. v. Tonto's, Inc.,* 336 N.W.2d 46, 51 (Minn.1983) (court suggested that plaintiffs could state a separate cause of action for breach of construction contract and fraudulent misrepresentation); *Luebke v. J.I. Case Threshing Machine Co.,* 178 Minn. 40, 44–45, 226 N.W. 415, 417 (1929) (judgment in replevin for threshing outfit did not bar action for damages for fraud in inducing purchase of the outfit). Courts of other jurisdictions are also in accord. *See, e.g., Fredonia Broadcasting Corp., Inc. v. RCA Corp.,* 481 F.2d 781, 790–91 (5th Cir.1973) (applying Texas law), *later appeal,* 569 F.2d 251, *cert. denied,* 439 U.S. 859, 99 S.Ct. 177, 58 L.Ed.2d 167 (1978); *Morgan v. Inter-Continental Trading Corp.,* 360 F.2d 853, 855 (7th Cir.1966) (applying Wisconsin law); *Bankers Trust Co. v. Pacific Employers Insurance Co.,* 282 F.2d 106, 110–11 (9th Cir.1960) (applying Nevada law), *cert. denied,* 368 U.S. 822, 82 S.Ct. 41, 7 L.Ed.2d 27 (1961); *Glesenkamp v. Nationwide Mutual Insurance Co.,* 344 F.Supp. 517, 519 (N.D.Cal.1972) (applying California law).

The Ninth Circuit explained the underlying basis for this rule in *Bankers Trust Co. v. Pacific Employers Insurance Co.:*

Appellant allegedly had two separate causes of action; it had a right to sue to have the contract performed and a right to seek recovery for any fraud which induced the contract. Entirely different facts are essential to maintaining the two suits. The former required proof of the contract, appellant's performance thereof and appellees' failure to perform; the instant suit requires proof of fraud in the inducement of the contract.

282 F.2d at 111.

Similarly, the fraud and contract claims of the plaintiffs in this case arose at different times and from different acts. Plaintiffs' fraud claim arose when Johnson & Johnson first made the promises, without intending to honor them, that allegedly induced plaintiffs to enter into the StimTech purchase agreement; plaintiffs' breach of contract claim arose only after Johnson & Johnson later failed to fulfill those promises. Although both the fraud and the contract claims look to Johnson & Johnson's intent,[4] each claim focuses on John-

---

**3.** Johnson & Johnson's contention that plaintiffs should be estopped from asserting that Johnson & Johnson's fraud antedated and induced the contract because plaintiffs never raised this claim below is wholly without merit. Judge Lord's initial opinion makes it clear that plaintiffs' fraud claim was predicated on their allegations that Johnson & Johnson made certain promises to the plaintiffs, which Johnson & Johnson never intended to fulfill, in an attempt to induce plaintiffs to sell StimTech to Johnson & Johnson. *See McDonald v. Johnson & Johnson,* 537 F.Supp. 1282, 1352–54 (D.Minn.1982),

*aff'd in part and rev'd in part,* 722 F.2d 1370 (8th Cir.1983), *as modified by* 722 F.2d 1390, *cert. denied,* —— U.S. ——, 105 S.Ct. 219, 83 L.Ed.2d 149 (1984).

**4.** In our earlier opinion we noted that, because plaintiffs' contract claim focused on that language in the StimTech agreement obligating the parties to act in good faith, a showing that Johnson & Johnson acted in bad faith was required to establish a breach of contract. *See McDonald,* 722 F.2d at 1309.

son & Johnson's intent at separate and distinct times. The fraud claim requires a showing of fraudulent intent at the time Johnson & Johnson made the promises that induced plaintiffs to enter into the Stim-Tech purchase agreement, whereas the breach of contract claim required a showing that Johnson & Johnson acted in bad faith after the parties entered into the StimTech agreement. Furthermore, Johnson & Johnson's breach of its promises only constituted evidence of its fraudulent intent rather than an element of plaintiffs' fraud claim.

We think it clear that plaintiffs' fraud and contract claims arise from separate and distinct wrongful acts by Johnson & Johnson. We therefore affirm the district court's holding that plaintiffs' fraud and contract claims constitute separate causes of action and that plaintiffs' collection of their contract judgment does not preclude litigation of their fraud claim.