Harvey James COLE, (C8–97–2281), Brehmer & Rosen, (C9–98–50), Appellants.

v.

The STAR TRIBUNE, et al., Defendants,

St. Paul Pioneer Press, et al., Denise Sibenaller, Diane Mundt, Sandra Bates, Respondents.

Nos. C8–97–2281, C9–98–50.

Court of Appeals of Minnesota.

July 14, 1998.

Jesse Gant, III, Minneapolis, for appellant Cole.

David L. Brehmer, Rachel B. Rosen, Brehmer & Rosen, Bloomington, appellant pro se in C9–98–50.

Stephen J. Smith, Smith & Tollefson, Owatonna, for respondent Diane Mundt.

J. Mark Catron, Autumn L. Anderson, Hansen, Dordell, Bradt, Odlaug & Bradt, St. Paul, for respondent Sandra Bates.

Eric J. Magnuson, Todd P. Zettler, Rider, Bennett, Egan & Arundel, Minneapolis, for respondent Denise Sibenaller.

Paul R. Hannah, St. Paul, for respondent St. Paul Pioneer Press and Knight Ridder Information, Inc.

Hubert H. Humphrey, III, Peter M. Ackerberg, St. Paul, for amici curiae State of Minnesota and Minnesota Board of Pardons.

Randy Lebedoff, Minneapolis, for respondents.

Considered and decided by AMUNDSON, P.J., and KLAPHAKE and SHUMAKER, JJ.

## OPINION

SHUMAKER, Judge.

Appellants Cole and Brehmer & Rosen seek review of (1) an adverse summary judgment in a defamation action, and (2) the

district court's imposition of bad faith costs and fees. Respondents Sibenaller, Mundt, and Bates move to strike portions of appellants' briefs and for an award of bad faith costs and fees on appeal. We affirm summary judgment and grant respondents' motions.

## FACTS

In 1997, appellant Harvey James Cole, represented by appellant Brehmer & Rosen, P.L.L.P., commenced a defamation action against respondents Minneapolis Star Tribune, Cowles Media Co., St. Paul Pioneer Press, Knight Ridder (collectively "the media"), and against his wife's nieces Denise Sibenaller, Diane Mundt, and Sandra Bates (collectively "nieces").[1] Cole alleged that his nieces defamed him before the Minnesota Board of Pardons and that the media also defamed him by publishing the nieces' statements to the board.

In May 1989, Cole shot and killed his wife. At the time of the shooting, Cole was taking the drug Halcion. He was found lying next to his wife with a gun between them. Cole was taken to a hospital and the police interviewed him there for approximately 30 minutes.

He initially said he did not remember what had happened to his wife. During the interview, however, he said that he remembered talking to her at approximately 2:00 a.m. the morning of the shooting. He told the police that he had a gun in the house and recalled pointing it at his wife. At first he said he did not know why he pointed it at her, but later said it was because they had had a disagreement. He recalled that she was lying in her bed, facing away from him. He heard a gunshot and thought that it was after that that his wife told him she was hurt. She told him her "lung had exploded or something," and that she was hurt and bleeding. Cole recalled his wife "wrestling around with a pillow under her head and back and forth."

He thought he talked to her about four or five minutes about being hurt; she asked him to call 911. Cole did not call 911.

Mrs. Cole's death certificate listed her cause of death as a loss of blood attributable to two gunshot wounds. The death certificate estimated that she died 20 minutes after she was shot.

Cole was arrested and pleaded guilty to second-degree murder. He was sentenced to 13½ years in prison. While in prison, he learned that other persons who had committed crimes while taking Halcion had been released due to effects of the drug. Shortly thereafter, he applied to the board of pardons for early release. The board of pardons publicly noticed the meeting and informed victims of Cole's crime that they had a right to be present at Cole's hearing, that they could submit a written or oral statement regarding the harm suffered by the victim, and that they could recommend denial or granting of the relief requested by Cole.

Sibenaller, Bates, and Mundt received personal, advance notice of the board of pardons' hearing. Between March 1 and 2, 1995, Sibenaller, Bates, and Mundt submitted statements to the board. The letters were filed with the board and were open to public inspection. Bates wrote:

> This was a cold blooded murder, not a mercy killing of a struggling family member, or even an impulsive act of passion, but a spineless act of shooting someone while they slept in their bed at night.

Sibenaller wrote: "Where was Margaret's mercy? It wasn't there in the 20 minutes that she begged for her life before he shot her again!" Mundt's letter spoke only of the loss her aunt's death caused.

None of the three nieces attended the March 22, 1995, board of pardons public hearing and none of them made any comments to the board about Cole except

---

1. A stipulation and order dismissed the Minneapolis Star Tribune on July 2, 1997. On April 9, 1998, despite having already stipulated to the Star Tribune's dismissal, Cole moved to dismiss the Star Tribune (and others). By order dated April 13, 1998, this court granted Cole's dismissal of the St. Paul Pioneer Press, et al., Bates, and the Star Tribune, et al. Cole challenges the summary judgment to Sibenaller and Mundt, and the district court's imposition of sanctions. Brehmer & Rosen, at least until its concessions at oral argument, appealed the entire district court summary judgment and sanctions.

through their written correspondence. The board rejected Cole's petition.

On March 23, 1995, the Associated Press (AP) placed an article on its wire about Cole and the board's reasons for rejecting his petition. The article stated that Cole shot his wife once and then ignored her pleas for mercy before he shot her a second time. That article was picked up by respondent St. Paul Pioneer Press and printed in its newspaper verbatim, except for one immaterial sentence, under the AP caption.

After the board of pardons refused to release Cole, he petitioned the district court for resentencing and was eventually resentenced and released in September 1996. Within approximately six months, the nieces were served with Cole's defamation complaint. Sibenaller and Mundt were served on March 21, 1997. Bates was served on March 24, 1997. The basis of Cole's complaint is that his nieces' letters harmed him, not only with the pardon board, but that they also further damaged his "already soiled reputation" and their comments may affect his future. His complaint alleges that the media defamed him by printing statements that were false and defamatory.

Summary judgment was granted to the media on the basis of the wire service defense and to the nieces on the bases of statute of limitations and privilege. The district court awarded costs and attorney fees to the nieces. The award was made against Cole personally and Cole's counsel at the district court, Brehmer & Rosen. Cole and Brehmer & Rosen appeal separately.

## ISSUES

1. Did the district court err when it granted summary judgment based on the wire service defense?

2. Did the district court err when it held that respondents Mundt, Sibenaller, and Bates were absolutely privileged to make their statements to the pardon board?

3. Did the district court abuse its discretion when it ordered appellants jointly to pay bad faith costs and fees?

4. Does appellants' failure to comply with the rules of civil appellate procedure require that portions of their briefs be stricken?

## ANALYSIS

On appeal from summary judgment, we review the record to answer two questions: (1) whether any genuine issues of material fact exist, and (2) whether the district court erred in its application of the law. *Offerdahl v. Univ. of Minn. Hosps. & Clinics,* 426 N.W.2d 425, 427 (Minn.1988).

### I. Wire Service

The district court, relying on the "wire service" defense, did not err when it granted the media summary judgment because the AP story and the Pioneer Press story were identical.

In Minnesota, a private individual's defamation cause of action against a newspaper must demonstrate that the newspaper knew or should have known that the defamatory statement was false. *Jadwin v. Minneapolis Star and Tribune Co.,* 367 N.W.2d 476, 491 (Minn.1985). The "wire service" defense recognizes that a newspaper, under ordinary circumstances, cannot be found by a jury to have acted negligently by relying on the accuracy of a news item obtained from a reputable wire service. *Appleby v. Daily Hampshire Gazette,* 395 Mass. 32, 478 N.E.2d 721, 725 (1985). Numerous jurisdictions have adopted this defense. *See, e.g., Waskow v. Associated Press,* 462 F.2d 1173, 1175–76 (D.C.Cir.1972); *Winn v. Associated Press,* 903 F.Supp. 575, 579 (S.D.N.Y.1995), *aff'd* 104 F.3d 350 (2d Cir.1996); *O'Brien v. Williamson Daily News,* 735 F.Supp. 218, 225 (E.D.Ky.1990), *aff'd* 931 F.2d 893 (6th Cir.1991); *Nelson v. Associated Press, Inc.,* 667 F.Supp. 1468, 1476–77 (S.D.Fla.1987); *Appleby,* 478 N.E.2d at 725, *Mehau v. Gannett Pacific Corp.,* 66 Haw. 133, 658 P.2d 312, 322–23 (1983); *Layne v. Tribune Co.,* 108 Fla. 177, 146 So. 234, 238–39 (1933); *Howe v. Detroit Free Press, Inc.,* 219 Mich.App. 150, 555 N.W.2d 738, 740–41 (1996); *Van Straten v. Milwaukee Journal Newspaper–Publisher,* 151 Wis.2d 905, 447 N.W.2d 105, 112 (Wis.Ct. App.1989), *review denied* 451 N.W.2d 297 (Wis.1989); *see also* James E. Boasberg, *With Malice Toward None: A New Look at*

*Defamatory Republication and Neutral Reportage*, 13 Hastings Comm. & Ent. L.J. 455, 457–64 (1991) (discussing the origin and evolution of the "wire service" defense).

While no Minnesota court has specifically addressed the validity of the wire service defense, the supreme court employed similar reasoning and analysis in *Church of Scientology of Minn. v. Minnesota State Med. Ass'n Found.*, 264 N.W.2d 152 (Minn.1978). In that case, a medical association served as a conduit, providing a magazine article critical of plaintiff to a state agency. *Id.* at 154–55. The supreme court held that because the article's original publisher was known to be reputable, there was no reason for the medical association to believe that the article was false and defamatory. *Id.* at 156 (citing Restatement (Second) of Torts § 581). There is no distinguishable difference between the *Church of Scientology* reasoning and that used in foreign jurisdiction wire service defense cases. We conclude, therefore, that the wire service defense is an available defense in the state of Minnesota.

 Further, because there is no question that the AP is a reputable news service that provides accurate information, *Appleby*, 478 N.E.2d at 725, we also conclude that the district court's application of the wire service defense to the media in this case was correct. We agree with the policy behind the other courts' decisions that recognizes that to impose an obligation of independent verification of wire service stories on all newspapers would cast "a heavy burden on the media's ability to disseminate newsworthy material," which in turn would leave only large, wealthy newspapers capable of covering multiple stories and regions. *See, e.g., id.* Summary judgment for the media is affirmed.

## II. Absolute Privilege

Cole claims that the letters submitted to the board of pardons by his nieces were false and defamatory. The district court did not err when it granted the nieces' summary judgment based on absolute privilege.

 "[D]efamatory matter published in the due course of a judicial proceeding is absolutely privileged." *Matthis v. Kennedy*, 243 Minn. 219, 224, 67 N.W.2d 413, 417 (1954). "[A]bsolute privilege has been extended to statements made in quasi-judicial proceedings." *Kellar v. VonHoltum*, 568 N.W.2d 186, 192 (Minn.App.1997), *review denied* (Minn. Oct. 31, 1997). The scope of the privilege encompasses "anything that may possibly be pertinent," resolving all doubt "in favor of relevancy and pertinency." *Matthis*, 243 Minn. at 225–26, 67 N.W.2d at 418.

 The Minnesota Board of Pardons consists of the governor, the attorney general, and the chief justice of the supreme court. Minn.Stat. § 638.01 (1996). It is empowered to grant pardons, reprieves, and commute sentences. *Id.* The board is required to "make all reasonable efforts to locate any victim of the applicant's crime" and to notify them that they may attend the hearing and submit statements to the board. Minn.Stat. § 638.06 (1996). The victim's statement "may summarize the harm suffered by the victim * * * and give * * * [a] recommendation on whether the application * * * should be granted." Minn.Stat. § 638.04 (1996). The board is required to "consider the victim's * * * statement when making its decision on the application." *Id.* We conclude that the board of pardons is a quasi-judicial entity because it applies "deliberate human judgment based upon evidentiary facts of some sort commanding the exercise of * * * discretionary power." *Oakman v. City of Eveleth*, 163 Minn. 100, 108–09, 203 N.W. 514, 517 (1925).

 Witnesses who appear before a pardon and parole board have been found to enjoy absolute privilege. *See, e.g., Johnson v. Kegans*, 870 F.2d 992, 997 (5th Cir.1989); *Pulkrabek v. Sletten*, 557 N.W.2d 225, 228 (N.D.1996) (letter submitted to parole board was absolutely privileged). We conclude that correspondence or statements made to the Minnesota Board of Pardons that are "possibly pertinent" or relevant to the proceedings are absolutely privileged. We affirm the district court because the nieces' statements meet this standard.

## III. Attorney Fees

We first review the district court's award of bad faith attorney fees, then we address

the nieces' motion for attorney fees on appeal.[2] Effective August 1, 1997 Minn.Stat. § 549.21 (1996) was repealed and replaced with Minn.Stat. § 549.211 (Supp.1997). Because Minn.Stat. § 549.21 applies to causes of action that arose before August 1, 1997, we use it to examine the award of attorney fees stemming from the district court action. However, because respondents filed their motions for bad faith attorney fees on appeal after August 1, 1997, any award of appellate attorney fees is governed by Minn.Stat. § 549.211.

## A. District Court's Sanctions

 An abuse of discretion standard is applied to a district court's decision on sanctions under Minn.Stat. § 549.21 or Minn. R. Civ. P. 11. *State Bank of Young America v. Fabel,* 530 N.W.2d 858, 863 (Minn.App. 1995), *review denied* (Minn. June 29, 1995). Attorney fees may be awarded upon a finding that a party acted in bad faith, asserted a claim that was frivolous, or asserted an unfounded position solely to delay the proceedings. Minn.Stat. § 549.21. Counsel has an affirmative duty to investigate the factual and legal underpinnings of a pleading and failure to do so results in the mandatory imposition of sanctions under rule 11. *Uselman v. Uselman,* 464 N.W.2d 130, 142 (Minn. 1990).

 Months in advance of the hearing, and on numerous occasions, appellants were given notice of the nieces' intentions to seek sanctions. Appellants were given an opportunity to respond to the sanctions. It is clear that nothing in Mundt's letter can reasonably be considered defamatory. Nevertheless, appellants added Mundt to the complaint, opposed her motion for summary judgment, and appealed against her to this court. Mundt was forced to spend thousands of dollars defending a frivolous lawsuit. The district court's award of sanctions to Mundt was clearly not an abuse of discretion.

 Second, because Bates was served with this lawsuit two years and two days after the alleged defamatory act, there was no reasonable basis in law or fact to believe that Cole could maintain a defamation action against Bates. *See* Minn.Stat. § 541.07(1) (1996) (two-year statute of limitations for defamation); *Wild v. Rarig,* 302 Minn. 419, 447, 234 N.W.2d 775, 793 (1975) (same). Bates, just like Mundt, spent thousands of dollars defending a frivolous action. The district court clearly did not abuse its discretion when it awarded Bates sanctions.

 Third, appellants cannot provide any reasonable basis to conclude that a hearing before the board of pardons was not a quasi-judicial proceeding. This state has long recognized that participants in quasi-judicial proceedings are entitled to absolute privilege. *See, e.g., Matthis,* 243 Minn. at 224, 67 N.W.2d at 417; *Kellar,* 568 N.W.2d at 192. In an attempt to avoid the district court's imposition of sanctions, appellants ask this court to view the issue of whether absolute privilege applies to proceedings before the board of pardons as an issue of first impression. *See, generally,* Minn.Stat. § 549.211, subd. 2(2) (Supp.1997) (no sanctionable violation occurs for non-frivolous arguments for extension, modification, or reversal of existing law). In some respects, almost any issue could be characterized as one of first impression. *Cf. Tyroll v. Private Label Chemicals, Inc.,* 505 N.W.2d 54, 57 (Minn.1993) (noting, "[w]ith a little ingenuity, most questions can be converted into so-called 'questions of law'"). Therefore, the possibility of characterizing an issue as one of first impression does *not* preclude the district court from awarding sanctions against a party or an attorney for pursuing such an issue if the conduct of the party or of the attorney is otherwise sanctionable. *See* Minn.Stat. § 549.211, subd. 3 (Supp.1997) (allowing imposition of sanctions if party's argument to alter or extend existing law is frivolous); *cf. Emme v. C.O.M.B.,* 418 N.W.2d 176, 180 (Minn.1988) (even if an issue

---

**2.** The award of costs and fees at the district court was made jointly against Cole personally and his district court lawyers, Brehmer & Rosen. Cole's attorney on appeal, Jessie Gant, III, was not involved below. Therefore, any references to "appellants" in the discussion of the imposition of sanctions at the district court refers to Cole individually and to Brehmer & Rosen, but not to Jessie Gant, III.

of first impression, certification of a question is justified only if there are substantial grounds for differences of opinion on the issue).

Here, even if the applicability of absolute privilege to board of pardons proceedings is an issue of first impression, appellants failed to recognize that the broader issue of absolute privilege in quasi-judicial proceedings, an issue that subsumes the applicability of absolute privilege in board of pardons cases, *had been decided adversely* to appellants. *See, e.g., Matthis,* 243 Minn. at 224, 67 N.W.2d at 417; *Kellar,* 568 N.W.2d at 192. Appellants have not and cannot distinguish the applicability of the absolute privilege recognized in *Matthis, Kellar,* and other quasi-judicial privilege cases from the applicability of absolute privilege in the board of pardons setting. The district court did not abuse its discretion when it awarded attorney fees to the nieces on this basis.

### B. Sanctions on Appeal

■ The nieces have moved this court for sanctions on appeal. At oral argument, this court specifically asked Brehmer & Rosen, "What in the letter by Diane Mundt was defamatory?" Brehmer & Rosen replied, "Your honor, in all truth, nothing." Cole, through his counsel on appeal, never conceded this issue. Similarly, on appeal, both Brehmer & Rosen and Cole conceded that the claim against Bates was barred by the statute of limitations. Neither appellant offered any explanation as to why it pursued appeals that had no basis in law. Further, neither party could reasonably suggest why a proceeding at the board of pardons should not be considered quasi-judicial.

Although it is true that appellants dismissed or conceded some of the causes of actions in this case, no dismissal or concession occurred until all briefing and other pre-oral argument motions were addressed by each of the nieces.[3] We also note that this court issued an order requiring appellants to address the issue of sanctions in either a

reply brief or by written response pursuant to Minn. R. Civ.App. P. 127. Appellants did neither. We conclude that appellants have continued to demonstrate bad faith in bringing these appeals. We award sanctions of $1,500 to Mundt, $1,500 to Bates, and $1,500 to Sibenaller, payable by Cole, Brehmer & Rosen, and Jessie Gant, III.

### IV. Motion to Strike

The rules regarding briefing to Minnesota's appellate courts are clear. First, the record on appeal consists of "the papers filed in the trial court, the exhibits, and the transcript." Minn. R. Civ.App. P. 110.01. Second, "[e]ach statement of a material fact shall be accompanied by a reference to the record." Minn. R. Civ.App. P. 128.02, subd. 1(c). And third, wherever a brief references any part of the record, *"reference shall be made* to the specific pages of the appendix or the supplemental record" or to the "particular part of the record, suitably designated, and to the specific pages of it." Minn. R. Civ.App. P. 128.03 (emphasis added).

■ The supreme court has concluded that in some circumstances it is a flagrant violation of the rules to fail to provide citations to the record. *See Luebke v. J.I. Case Threshing Mach. Co.,* 178 Minn. 40, 46, 226 N.W. 415, 417 (1929) (court characterized the brief in question as "show[ing] such ignorance or willful disregard of [citation] rule that it [could] not go unnoticed."). Further, citations to the record "are particularly important where, as here, the record is extensive." *Hecker v. Hecker,* 543 N.W.2d 678, 681–82 n. 2 (Minn.App.1996), *aff'd* 568 N.W.2d 705 (Minn.1997). The purpose behind rule 128 is to provide a standardized brief format to allow appellate courts to read and absorb the voluminous presented materials in each of the multiple cases that the court simultaneously considers. *See* 3 David F. Herr & Eric J. Magnuson, *Minnesota Practice,* § 128.3 (1996). Failure to comply with the rules can diminish a brief's persuasiveness, *id.,* lead to non-consideration of an issue, *id.* (citing *Schoepke v. Alexander*

---

3. We note that there were an unusual number of motions brought before and after the oral argument in this case. Much of this action was the result of appellants' failure to dismiss frivolous

claims. In addition, appellants also needed to respond to an extra-procedural motion by Cole's counsel to submit an "amicus" brief in support of Cole.

*Smith & Sons Carpet Co.,* 290 Minn. 518, [519–20], 187 N.W.2d 133, [135] (1971)), or dismissal of an appeal. *Id.* (citing *State ex rel. Barrett v. Korbel,* 300 Minn. 563, [563], 221 N.W.2d 125, [125] (1974)).

■ In Cole's four-page statement of facts, most of the factual assertions contain no citation. He provided this court with only one citation containing a page number. Moreover, several citations merely referred this court to "the file." Similarly, Brehmer & Rosen's nearly six-page statement of facts contains not a single citation to the record. In addition, both appellants erroneously stated in their briefs and throughout the motions on this appeal that the three nieces were served on the same date; a statement that appellants later conceded to be incorrect. As in *Luebke,* we consider appellants' conduct to demonstrate either ignorance of, or willful disregard for, the appellate rules. Accordingly, we strike those portions of appellants' briefs described in the nieces' motion.

## DECISION

The district court properly awarded summary judgment to the media because the media had reasonably relied on a reputable wire service article. The district court properly awarded summary judgment to the nieces because their statements occurred in the context of a quasi-judicial setting and were relevant and pertinent. The district court did not abuse its discretion when it awarded the nieces bad faith attorney fees because appellants did not have a reasonable basis in law or fact to assert an action against the nieces. We award attorney fees to the nieces on appeal because appellants did not have a reasonable basis in law or fact to bring the appeal. Finally, we strike portions of appellants' briefs because they failed to provide citations to the record, relied on extra-record assertions, and made repeated erroneous assertions of facts.

**Affirmed; motions granted.**