Arthur I. WASKOW, Appellant,

v.

**ASSOCIATED PRESS**
and
The Evening Star Newspaper Company.

**No. 71–1109.**

United States Court of Appeals,
District of Columbia Circuit.

March 23, 1972.

Rehearing Denied April 28, 1972.

Mr. Monroe H. Freedman, Washington, D. C., was on the brief for appellant.

Messrs. William R. Glendon and Anthony F. Essaye, Washington, D. C., were on the brief for appellee Associated Press.

Messrs. Francis L. Casey, Jr., and Curtis E. von Kann, Washington, D. C., were on the brief for appellee The Evening Star Newspaper Co.

Before McGOWAN, LEVENTHAL and MacKINNON, Circuit Judges.

PER CURIAM:

After joining with Benjamin Spock, William Sloane Coffin, and Mitchell Goodman in an antiwar demonstration at the Department of Justice in 1967, appellant was reclassified 1–A by his Baltimore draft board. On September, 12, 1969, he appeared before that board, stated his belief that his reclassification was punishment for his participation in the demonstration, and urged the board members to resign. On the next morning, September 13, the *Baltimore Sun* carried a story about this appearance. The *Sun* article referred to appellant's participation in the Justice Department demonstration as follows:

He was among the teachers and writers who met with Justice Department officials that day. The group includ-

ed Dr. Benjamin Spock, . . . the Rev. William Sloane Coffin, . . . and Mitchell Goodman. . . . *All three were sentenced* to two-year jail terms and received $5,000 fines last July 11 on charges of conspiring to aid and counsel violations of the draft law. (emphasis added)

The Baltimore Bureau of appellee Associated Press regularly reviews stories carried by Baltimore member newspapers, selecting some for rewriting and distribution to member newspapers in other cities. On the morning of September 13, Randolph C. Arndt, performing that function, selected the *Sun* story about appellant. In reading the story, however, Mr. Arndt, in the words of his affidavit "mistakenly concluded that [appellant] was one of the persons convicted of conspiring to aid and counsel violations of the draft law, and . . . rewrote the story, reflecting this belief." [1]

Later that day, the AP story was received at the offices of the appellee *Star*, where it was selected by an editor for insertion in that evening's editions. The selection was approved by Principal Assistant City Editor Philip Robbins, who obtained from the *Star's* "clipping file" on appellant four items of information on his background, which he added to the AP text. The *Star* editions of September 13 carried the story, which all parties agree was factually erroneous insofar as it stated that appellant had been convicted of draft law violations.

While reading through the paper, a *Star* editor discovered the error, and notified his superiors and the Baltimore Bureau of the AP. On the next day, September 14, the AP issued a corrective story, which was accompanied on its wire by a request that those newspapers which had used the original story print the correction. On the 15th, a Sunday, the *Star* carried its own correction at

---

1. The AP story centered on the meeting between appellant and his draft board, but stated that "Waskow is one of the four defendants appealing a conviction in Boston of counseling draft violators. The others are Dr. Benjamin Spock; the Rev. William Sloane Coffin, . . . and Mitchell Goodman. . . . "

the bottom of page A–2, the same page on which the original story had appeared on Friday.[2]

The issue before us is whether, on these undisputed facts, the District Court erred in granting summary judgment in favor of both the AP and the *Star*. We hold that it did not, and that the reasons helpfully stated by it for doing so are soundly conceived in the light of the governing Supreme Court doctrine.

I

As the District Court noted, appellant is clearly a "public figure" within the meaning of the law established by New York Times v. Sullivan, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964), and its progeny.[3] His libel actions against the *Star* and the AP are, therefore, barred by the First Amendment unless he can show with "convincing clarity" that appellees acted with " 'actual malice'—that is, with knowledge that it [the story] was false or with reckless disregard of whether it was false or not." 376 U.S. at 280, 84 S.Ct. at 726. Against the affidavits of appellees' employees to the effect that they were unaware of the error, there is

nothing in the record from which it can be inferred that the story was distributed or published "with knowledge that it was false." [4] The issue, then, is whether appellees acted with "reckless disregard" for the accuracy of the story.

"Reckless disregard," as the Supreme Court made clear in St. Amant v. Thompson, 390 U.S. 727, 731, 88 S.Ct. 1323, 1325, 20 L.Ed.2d 262 (1968), is not determined with reference to the objective standard of a "reasonably prudent" newsman. Rather, "[t]here must be sufficient evidence to permit the conclusion that the *defendant in fact entertained serious doubts* as to the truth of his publication." *Id.* (emphasis added) In this case, although it perhaps might be argued that appellees' employees acted without reasonable prudence in the circumstances, the undisputed facts do not permit an inference that they "in fact entertained serious doubts."

Turning first to appellee AP, there is no evidence that Randolph Arndt of its Baltimore Bureau in fact doubted the accuracy of his assumption that appellant had been convicted with Spock, Coffin, and Goodman. As the District Court noted, the article in the *Sun* was susceptible to misinterpretation. It

---

**2.** These corrective measures by the AP and the *Star* were taken before they received notice from appellant. According to the affidavit of the *Star's* Managing Editor, its correction was printed on Sunday rather than Saturday "because our Saturday circulation is· considerably smaller than our weekday circulation whereas our Sunday circulation is considerably larger, and I wanted to reach the broadest possible audience of Star readers." The correction stated:

Correction

An Associated Press story in Friday's Star erroneously reported that Arthur I. Waskow, who is fighting induction by a Baltimore draft board, was among those convicted in Boston for conspiring to aid and counsel draft law violations.

Waskow was not a defendant in Boston. The AP dispatch had incorrectly listed him along with the defendants [naming the defendants]. . . . The main point of Friday's news story was that Waskow asked members of Local

Board No. 20 to resign "rather than continue to conscript men for an unconstitutional, illegal, immoral and obscene war in Vietnam."

**3.** *See* Curtis Publishing Co. v. Butts, 388 U.S. 130, 87 S.Ct. 1975, 18 L.Ed.2d 1094 (1967). In addition to his political activities, appellant has written extensively. His attorney offered to stipulate before the District Court that "Arthur Waskow is a public figure whose public activities are well known to the public and the press."

**4.** As *New York Times* makes clear, the fact that a news organization possesses information (such as items in a clipping file) which indicates the falseness of a news item does not establish that the organization acted with knowledge of the falseness. The proper focus is on "the state of mind . . . [of] the persons in the . . . organization having responsibility for the publication of the [item] . . . ." 376 U.S. at 287, 84 S.Ct. at 730.

stated that appellant had joined with Spock, Coffin, and Goodman in the Justice Department demonstration, and then noted that "all three" had been convicted of draft law violations. In that context, the use of the word "all" might have led Arndt to conclude that the word "three" had been used inadvertently, and that "all four" had been convicted.

■ The issue, to repeat, is not whether such a conclusion was reasonable, or whether prudence required that Arndt verify his assumption before distributing the story. Rather, it is whether Arndt in fact seriously doubted the accuracy of his assumption. In light of the wording of the *Sun* article, and in light of the fact that Arndt knew from the article that appellant had participated in the demonstration which resulted in the convictions, we hold that the District Court did not err in ruling that the AP story was the product of Arndt's good faith misinterpretation of the *Sun* story, and not "the product of his imagination." 390 U.S. at 732, 88 S.Ct. 1323.

Similarly, the court below correctly ruled that the *Star* did not publish the AP story with "reckless disregard." The erroneous information was not transmitted to the *Star* in a manner likely to arouse suspicion. Newspaper editors have no cause to doubt the accuracy of a major wire service dispatch, absent an apparent inconsistency or other indication of error.[5] Here, there was no such indication. The erroneous statement was consistent with the rest of the AP story, as well as with Principal Assistant City Editor Robbins' prior information about appellant.[6] Moreover, we can assume that the contents of the *Star's* clipping file on appellant, which presumably detailed his numerous anti-war activities,[7] were consistent with the

AP story, and unlikely to have aroused Robbins' suspicions when he consulted it.

■ Appellant argues, however, that Robbins, in consulting the clipping file, must have noticed the absence of clippings relating to a conviction for draft law violations, and therefore must have entertained doubts as to the accuracy of the AP report. Whether or not such an "inference upon an inference" could ever establish reckless disregard with "the convincing clarity which the constitutional standard demands" (376 U.S. at 285–286, 84 S.Ct. at 729) is doubtful. Certainly it cannot do so in this case. There is, first, no indication that Robbins examined the entire contents of the clipping file; his affidavit states only that he "obtained" information from it. In addition, the plausibility of appellant's inferences is diminished by the fact that the erroneous matter was peripheral to the main point of the story, and the fact that the file was used, not with reference to information in the AP text, but to obtain *additional* information.

II

■■ Appellant advances two additional arguments on this appeal, both of which can be disposed of briefly. First, he contends that "back issues" of the September 13 *Star* were sold subsequent to that date, after the paper had discovered the error, and that the libel was therefore "republished" with the requisite malice. We do not believe that the *New York Times* rule is to be nullified so easily. That case established a far-reaching constitutional doctrine, which must be applied in light of the realities of the modern newspaper business. Metropolitan newspapers operate under a daily deadline; and once the deadline

---

5. This was not, for example, an article "based wholly on an unverified anonymous telephone call." 390 U.S. at 732, 88 S.Ct. at 1326.

6. In his affidavit, Robbins stated that "[a]t the time of the publication of this story, I knew that Dr. Waskow . . .

had been active in regard to the anti-war movement and various other 'radical' causes."

7. The joint appendix contains copies of many articles pertaining to appellant's political activities.

is met and an edition is printed, it is placed in a distribution system that appellee terms "pre-determined and largely self-executing." Given those business methods, we think the realistic view is that, for purposes of the *Times* rule, a daily newspaper is "published" only once —when it is printed and placed in the distribution system—unless it is redistributed *outside the normal channels* with the specific intent to convey the libelous information.

Second, appellant urges that we create a new tort, namely, the wilful refusal to make a good faith correction of a libelous news story. Even assuming that the federal courts in the District of Columbia should undertake to create new torts at this late stage in the development of the local judicial system, there would be no reason to do so in this case. Both appellees issued adequate and timely corrections, without waiting for a request from appellant.

Affirmed.