**Gale WINN, President of Miss Black Virginia Pageant, Inc. and Miss Black Virginia Pageant, Inc., Plaintiffs,**

v.

**ASSOCIATED PRESS, and Louis Boccardi, President of Associated Press, 50 Rockefeller Plaza, New York, New York, Defendants.**

**No. 92 Civ. 6535 (JES).**

United States District Court,
S.D. New York.

Nov. 1, 1995.

Franshone Winn, Amityville, New York, for Plaintiffs.

Rogers & Wells, New York City (Margaret Blair Soyster, Deborah R. Schwartz, of counsel), for Defendants.

## MEMORANDUM OPINION AND ORDER

SPRIZZO, District Judge.

The Miss Black Virginia Pageant, Inc. (the "MBVP") and its President, Gale Winn (collectively "plaintiffs"), bring the instant action against the Associated Press (the "AP") and its President, Louis Boccardi (collectively "defendants"), asserting claims of libel, material misrepresentation and tortious interference with contracts. Pursuant to Rules 37 and 56 of the Federal Rules of Civil Procedure, defendants move for summary judgment, as well as dismissal and the imposition of monetary sanctions based upon willful obstruction of discovery. Plaintiffs cross-move for summary judgment, as well as sanctions.

### BACKGROUND

Founded by Gale Winn in 1985, the MBVP was established to provide artistic, cultural and educational opportunities to children and young women in Virginia. Complaint ¶ 3; Affidavit of Gale Winn Sworn to June 25, 1993 ("Winn Aff.") ¶ 1. To that end, the MBVP has sponsored the annual Miss Black Virginia and Future Miss Black Virginia pageants in Norfolk, Virginia. Defendants' Statement Pursuant to Local Rule 3(g) dated August 1, 1994 ("Deft. Rule 3(g) St.") ¶ 1.

Since 1988, the two pageants have been televised by major affiliate television stations in the State of Virginia. Complaint ¶ 3. At all times pertinent to this action, Gale Winn was the president of the MBVP. Winn Aff. ¶ 1.

The AP, a not-for-profit news cooperative, is comprised of member newspapers, television stations and radio stations involved in the collection, distribution and overall exchange of news reports. Deft. Rule 3(g) St. ¶¶ 2, 5. In some instances, the AP may acquire news reports through original reporting by AP staff members. *Id.* ¶ 3. However, the AP most commonly acquires published news reports from its members, rewrites and edits them to some degree and then distributes them to its members. *Id.* In Virginia, the AP acquires approximately 70 percent of its news reports from its members and then disseminates the information on its state wire.[1] *Id.* ¶ 4.

The *Virginian–Pilot,* a morning newspaper, has been a member of the AP for many years. Deft. Rule 3(g) St. ¶ 10. In the past fifteen years, the AP's Richmond Bureau has transmitted approximately 16,000 news reports, an average of three per day, based upon articles published by the *Virginian–Pilot. Id.* ¶ 11. Prior to the instant action, the AP had never received a complaint regarding any story which had originated with the *Virginian–Pilot. Id.*

On August 7, 1992, the *Virginian–Pilot* published an article entitled "Miss Black Virginia 1991 Calls Pageant 'A Fraud'" (the "*Virginia–Pilot* article"). Deft. Rule 3(g) St. ¶ 6; Affidavit of Joseph A. Taylor Sworn to July 28, 1994 ("Taylor Aff.") ¶ 8, Exh. A. The article, which contained many direct quotations by contestants and sponsors alike, addressed the problems and controversies surrounding the Miss Black Virginia and Future Miss Black Virginia pageants. Taylor Aff. ¶ 8, Exh. A. More specifically, the article described a deteriorating organizational structure within the MBVP and detailed alleged failed promises concerning cash and prizes, as well as declining participation and sponsorship. *Id.* In the article, Gale Winn responded to the allegations by labeling the charges "a malicious and slanderous attempt to sabotage the Miss Black Virginia Pageant." *Id.*

As the AP correspondent in Norfolk, Virginia, Joseph A. Taylor acquires local news reports, often rewrites them to some degree and transmits them to the AP's Richmond Bureau for state-wide dissemination. Taylor Aff. ¶ 4. On the morning of August 7, 1992, Taylor read the *Virginian–Pilot* article and concluded that it was "thoroughly researched and fairly presented." *Id.* ¶¶ 8–9. Relying entirely on the *Virginian–Pilot* article, Taylor prepared a news report concerning the MBVP controversy. *Id.* ¶ 10. In accordance with standard AP practice, the news report was electronically transmitted to the AP's Richmond Bureau for review and edit. *Id.*

That same day, Jean McNair Petkofsky, an experienced editor in the Richmond Bureau, reviewed the revised *Virginian–Pilot* article and concluded that "[t]he article appeared to be thoroughly researched and fairly presented." Affidavit of Jean McNair Petkofsky Sworn to July 28, 1994 ("Petkofsky Aff.") ¶¶ 2, 5. As a result, Petkofsky made no substantive revisions to the articles originally prepared by Taylor. *Id.* ¶ 5. Petkofsky approved the articles for transmission over the state wire. *Id.*

At approximately 2:56 p.m., on August 7, 1992, the AP disseminated the news report concerning the MBVP controversy on the state wire for morning newspaper members. Deft. Rule 3(g) St. ¶ 16; Taylor Aff. ¶ 11, Exh. B–1. At approximately 12:02 a.m., on August 8, 1992, the AP retransmitted the identical news report on the state wire for afternoon newspaper members. Deft. Rule 3(g) St. ¶ 17; Taylor Aff. ¶ 11, Exh. B–2. On August 7, 1992, the AP also disseminated two brief broadcast stories, based upon the revised news report, on the state broadcast wire to member radio and television stations. Deft. Rule 3(g) St. ¶ 18; Taylor Aff. ¶ 11, Exhs. B–3 & B–4. Aside from a few omitted statements, to be discussed below, the two news reports and two broadcast stories were

---

1. The AP distributes news reports electronically on state wires, or with a story of national interest, on the national wire. Deft. First Rule 3(g) St. ¶ 3.

in substance, identical to the *Virginian–Pilot* article.[2] Taylor Aff. ¶ 11.

On September 1, 1992, plaintiffs commenced the instant action against the AP and its President, Louis Boccardi.[3] In their first cause of action, plaintiffs claim that defendants maliciously published twelve false and defamatory statements concerning the MBVP and Gale Winn. Complaint ¶¶ 1–10. In their second cause of action, plaintiffs claim that defendants published two other false and defamatory statements concerning Gale Winn. *Id.* ¶ 11. In their third cause of action, plaintiffs claim that defendants made material misrepresentations concerning plaintiffs, which the public has relied upon. *Id.* ¶¶ 12–16. In their fourth cause of action, plaintiffs allege that defendants tortiously interfered with plaintiffs' unspecified contracts with reigning winners, past winners and sponsors by publishing the allegedly defamatory statements. *Id.* ¶¶ 17–20.

On May 27, 1993, defendants moved for partial summary judgment. By order dated October 14, 1993, the Court denied that motion for summary judgment. Defendants now move for summary judgment on all issues, as well as monetary sanctions based upon the willful obstruction of discovery. Plaintiffs cross-move for summary judgment, as well as sanctions. For the reasons that follow, defendants' motions for summary judgment and sanctions are granted.

## DISCUSSION

On a motion for summary judgment, the moving party must demonstrate "that there is no genuine issue as to any material fact and that [they are] entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). On the other hand, a party opposing a motion for summary judgment must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986). In determining whether a genuine issue of fact exists, a district court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986).

## I. CHOICE OF LAW

Where, as here, subject matter jurisdiction is based upon diversity of citizenship,[4] a district court must apply the choice of law rules of the forum state. *See Klaxon Co. v. Stentor Electric Mfg. Co.,* 313 U.S. 487, 496–97, 61 S.Ct. 1020, 1021–22, 85 L.Ed. 1477 (1941). Under New York choice of law rules, the state with the most significant relationship to an alleged tort supplies the governing substantive law. *See Reeves v. American Broadcasting Cos.,* 719 F.2d 602, 605 (2d Cir.1983) (citing *Nader v. General Motors Corp.,* 25 N.Y.2d 560, 307 N.Y.S.2d 647, 650–651, 255 N.E.2d 765, 768–769 (1970)). In this case, because plaintiffs are domiciled in Virginia and the causes of action arose there, the State of Virginia possesses the most significant relationship to this action. *See, e.g., AroChem Int'l, Inc. v. Buirkle,* 968 F.2d 266, 269–270 (2d Cir.1992) (recognizing that most significant contacts normally are domicile and locus of tort). As a result, the Court will apply the substantive law of Virginia to the facts of this case.

## II. THE DEFAMATION CLAIMS

In their first cause of action, plaintiffs claim that defendants published twelve defamatory statements concerning the MBVP. Complaint ¶¶ 1–10. In their second cause of action, plaintiffs claim that defendants published two defamatory statements concerning

---

**2.** The AP did not transmit any other news reports concerning the MBVP or Gale Winn in August 1992. Deft. First Rule 3(g) St. ¶ 19. Moreover, the AP did not transmit any news reports concerning the MBVP over its national wire. Taylor Aff. ¶ 11.

**3.** Although named in the complaint, plaintiffs have not alleged any separate wrongdoing by Boccardi other than as set forth above.

**4.** At the commencement of this action, the MBVP and Gale Winn were both citizens of the State of Virginia. Complaint ¶ 1. Based upon the pleadings and the record, it appears that the Associated Press and Louis Boccardi were both citizens of the State of New York.

Gale Winn. *Id.* ¶ 11. However, while each of these allegedly defamatory statements was contained in the *Virginian–Pilot* article, the AP did not publish, in words or in substance, either the two statements concerning Gale Winn or six of the twelve statements concerning the MBVP. As a result, the first cause of action should be dismissed to the extent that it is based upon the six statements not published by the AP, and the second cause of action should be dismissed in its entirety. The third cause of action should also be dismissed to the extent that it is based upon any of these statements.

■ In any event, the first, second and third causes of action must be dismissed in their entirety. It is well-established that, "so long as they do not impose liability without fault, the States may define for themselves the appropriate standard of liability for a publisher or broadcaster of defamatory falsehood injurious to a private individual." *Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 347, 94 S.Ct. 2997, 3010, 41 L.Ed.2d 789 (1974); *cf. New York Times Co. v. Sullivan,* 376 U.S. 254, 283, 84 S.Ct. 710, 727, 11 L.Ed.2d 686 (1964) (applying actual malice standard to public officials); *Curtis Pub. Co. v. Butts,* 388 U.S. 130, 155, 87 S.Ct. 1975, 1991, 18 L.Ed.2d 1094 (1970) (applying actual malice standard to public figures). Under the law of Virginia, a private plaintiff may recover actual, compensatory damages against a media defendant upon demonstrating by a preponderance of the evidence the negligent publication of a defamatory statement. *See Shenandoah Publishing House, Inc. v. Gunter,* 245 Va. 320, 323, 427 S.E.2d 370, 372 (1993); *Gazette, Inc. v. Harris,* 229 Va. 1, 13–14, 325 S.E.2d 713, 724–25, *cert. denied sub nom. Fleming v. Moore,* 472 U.S. 1032, 105 S.Ct. 3513, 87 L.Ed.2d 643 (1985). In order to recover presumed or punitive damages, a private plaintiff must demonstrate actual malice by clear and convincing evidence. *See Gertz,* 418 U.S. at 342, 94 S.Ct. at 3008.[5]

■ Under the so-called wire defense doctrine, initially enunciated in *Layne v. Tribune Co.,* 108 Fla. 177, 146 So. 234 (1933) (*en banc* ), the mere reiteration of a news article published by a recognizable reliable source of daily news cannot constitute defamation by endorsement, unless the story was reproduced in a negligent manner. *Layne,* 146 So. at 238–39. As a general matter, most modern publishers could not afford to verify the absolute authenticity of every news item, and continue to promptly disseminate news of national or worldwide interest. *Id.,* 108 Fla. at 188, 146 So. 234; *see also Appleby v. Daily Hampshire Gazette,* 395 Mass. 32, 478 N.E.2d 721, 725–26 (1985) (verification would force smaller publishers to cover only purely local events). Thus, the wire service defense is available where, as here, a news organization reproduces an apparently accurate article by a reputable publisher, without substantial change and without actual knowledge of its falsity. *See Nelson v. Associated Press, Inc.,* 667 F.Supp. 1468, 1476–77 (S.D.Fla.1987); *accord O'Brien v. Williamson Daily News,* 735 F.Supp. 218, 225 (E.D.Ky.1990), *aff'd,* 931 F.2d 893 (6th Cir. 1991); *Brown v. Courier Herald Pub. Co.,* 700 F.Supp. 534, 537 (S.D.Ga.1988); *McKinney v. Avery Journal, Inc.,* 99 N.C.App. 529, 393 S.E.2d 295, 297 (1990).

For example, in *Holden v. Clary,* 1992 WL 373145 (E.D.Va.1992), as in this case, a private plaintiff sued the AP for compensatory and punitive damages based upon the AP's dissemination of an article originally published by a local newspaper. In *Holden,* the United States District Court for the Eastern District of Virginia recognized that the local newspaper possessed a solid journalistic reputation, that the article contained no internal inconsistencies, and that the AP had complied with all of its standard procedures concerning revision and transmission. *Holden,* 1992 WL 373145, at *1, 4. The court then added that the AP and other news services, which are responsible for the prompt and efficient transmission of news, "cannot be expected to research the minute details of every story that passes over their wires, unless they have reason to delve further into a certain article's contents." *Id.* at *4. In

---

5. For purposes of this motion only, defendants concede that plaintiffs are merely private figures, although it appears that plaintiffs may well be limited purpose public figures, subject to the actual malice level of fault requirement. *See Gertz,* 418 U.S. at 351, 94 S.Ct. at 3012.

the end, the court held that the local newspaper was primarily responsible, rather than the AP, which had demonstrated ordinary care in preparing and transmitting the article. *Id.*

■ In this case, there is no evidence that the AP was negligent in publishing any of the allegedly defamatory statements. In the past, when Taylor personally covered the same event as the *Virginian–Pilot,* the ensuing article by that reputable newspaper had always accurately reflected the events witnessed by Taylor. Taylor Aff. ¶ 6. Moreover, at the rewriting stage, Taylor concluded that the *Virginian–Pilot* article was thoroughly researched, fairly presented, neither improbable nor implausible and suggested no factual errors warranting further investigation. *Id.* ¶ 9. Similarly, Petkofsky was fully familiar with the strong journalistic reputation of the *Virginian–Pilot* during his fifteen years with the AP, including seven years as the Norfolk correspondent. Petkofsky Aff. ¶ 4. At the editing stage, Petkofsky likewise concluded that the article did not appear inaccurate in any respect and approved it for transmission on the state wire without any substantive revisions. *Id.* ¶ 5.[6]

Accordingly, the first, second and third causes of action must be dismissed in their entirety because plaintiffs have failed to demonstrate that there is any basis for a rational fact finder to conclude that defendants were negligent in publishing the allegedly defamatory statements.

### B. *Tortious Interference with Contracts*

In their fourth cause of action, plaintiffs claim that defendants tortiously interfered with plaintiffs' contracts with reigning winners, past winners and sponsors by publishing the allegedly defamatory statements. Complaint ¶¶ 17–20.

■ Under the law of Virginia, a plaintiff may set forth a *prima facie* case of tortious interference with a contractual relationship by demonstrating the following: (1)

a valid contractual relationship, (2) knowledge of the contractual relationship, (3) intentional interference with the contractual relationship; and (4) damages resulting therefrom. *Century–21 v. Elder,* 239 Va. 637, 639, 391 S.E.2d 296, 298 (1990) (citing *Chaves v. Johnson,* 230 Va. 112, 118, 335 S.E.2d 97, 102 (1985)). There is no evidence that defendants interfered with any contractual relationships by publishing the allegedly defamatory statements. Nor is there any evidence that Taylor and Petkofsky were aware of any such contractual relationships. Taylor Aff. ¶ 10 n. 1; Petkofsky Aff. ¶ 5 n. 1. There is also no evidence that either Taylor or Petkofsky intended to interfere with any such relationships. Taylor Aff. ¶ 10 n. 1; Petkofsky Aff. ¶ 5 n. 1.

In any event, because the Court has concluded that defendants did not act improperly in transmitting the information for dissemination, it follows that its conduct in so doing cannot afford a rational basis for any alleged interference with contractual relationships. Therefore, the fourth cause of action must also be dismissed.

### III. SANCTIONS

Pursuant to Rule 37, defendants also move for dismissal and the imposition of monetary sanctions based upon plaintiffs' willful obstruction of discovery. Since the Court has concluded that plaintiffs' claims must be dismissed on the merits, the Court need not reach the question of whether the sanction of dismissal should be imposed based upon the misconduct alleged. However, for the reasons which follow, the Court concludes that the imposition of monetary sanctions is warranted.

■ The Federal Rules of Civil Procedure were designed to afford each party a full and fair opportunity to conduct discovery necessary for trial preparation. *See Nittolo v. Brand,* 96 F.R.D. 672, 676 (S.D.N.Y.1983) (citing *Cine Forty–Second St. Theatre Corp.*

---

**6.** While no AP staff member attended the Miss Black Virginia Pageant in 1992 and the AP did not communicate with Gale Winn prior to publishing the news reports, Defendants' Statement Pursuant to Local Rule 3(g) dated October 3, 1994 at 6, that fact is legally irrelevant because to require such independent verification would subvert the policies underlying the wire defense doctrine.

*v. Allied Artists Pictures Corp.*, 602 F.2d 1062 (2d Cir.1979)). A federal district court possesses broad inherent power to impose sanctions in response to abusive litigation practices, thereby ensuring the proper administration of justice. *See National Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639, 643, 96 S.Ct. 2778, 2780, 49 L.Ed.2d 747 (1976) (per curiam). Accordingly, pursuant to Fed.R.Civ.P. 37, if a party fails to provide discovery or to obey a court order, a district court may, *inter alia*, dismiss the action and require the payment of reasonable expenses, including attorney's fees. *See Cine Forty–Second Theatre Corp.*, 602 F.2d at 1066.

In this case, six pre-trial conferences were required to ensure compliance by plaintiffs, who the Court finds have deliberately impeded the discovery process.

The deposition of Gale Winn, for example, required an inordinate amount of time, necessitated numerous pre-trial conferences and generated limited factual information. The first deposition of Gale Winn, on January 7, 1994, commenced almost two hours late because Gale Winn and her counsel arrived late. Affidavit of Margaret Blair Soyster Sworn to July 29, 1994 ("Soyster Aff.") ¶ 5. Then, after overhearing a conversation concerning the case, plaintiffs abruptly terminated the first deposition. *Id.* ¶ 5; Deposition of Gale Winn ("Winn Dep.") 59–60. By letter, defendants issued a formal apology concerning any possible misunderstanding and requested a rescheduling. Soyster Aff. ¶ 6, Exh. A. Plaintiffs ignored the request. *Id.* ¶ 6. On January 21, 1994, the Court held a pre-trial conference at which the Court directed Gale Winn to complete her deposition over a three day period or face a dismissal with prejudice.

On February 23, 1994, defendants resumed the deposition of Gale Winn. Soyster Aff. ¶ 8. However, Gale Winn insisted on writing out each question and proposed answer prior to issuing a verbal response. *Id.* ¶ 8; Winn Dep. 86–90. On February 23, 1994, the Court held another pre-trial conference. At that conference, Franshone Winn, counsel for

plaintiffs, advised the Court that Margaret Blaire Soyster, counsel for defendants, did not express any objections concerning the conduct of the deposition. Transcript of Pre–Trial Conference dated February 23, 1994 ("2/23/94 PTC Tr.") at 3. However, the deposition transcript indicates that Soyster unambiguously expressed her objections. Winn Dep. 86–90. As a result, the Court removed the three day limitation, allowed the deposition to continue to completion "[h]owever long it takes," and warned that costs could be assessed at the close of the case. 2/23/94 PTC Tr. at 3.

On February 25, 1994, defendants for the third time resumed the deposition of Gale Winn. Soyster Aff. ¶ 11. At the close of the second day of the deposition, however, Franshone Winn indicated that plaintiffs deemed the deposition to be complete. *Id.* ¶¶ 12–13; Winn Dep. 612–14. On March 8, 1994, the Court held a pre-trial conference. At the pre-trial conference, the Court heard testimony from both Soyster and Franshone Winn concerning the matter. While under oath, Franshone Winn, in effect, denied that plaintiffs indicated that they deemed the deposition to be complete at the close of the second day, a claim that is refuted by the transcript of that deposition. Transcript of Pre–Trial Conference dated 3/8/94 ("3/8/94 PTC Tr.") at 4, 17–18; Winn Dep. 612–14. Although the deposition transcript was not then available, the Court did not find Winn's testimony credible on that issue, reiterated that there were no time limitations on the deposition and imposed the costs of the conference upon plaintiffs.[7] *Id.* at 19–20, 23, 26, 28.

In addition, Gale Winn failed to cooperate by repeatedly providing uninformative responses at her deposition. For example, during the deposition conducted in February, Gale Winn did not recall who managed the financial affairs of the MBVP, what financial records were maintained and where such records were located. Winn Dep. 143–191. At the pre-trial conference on March 8, 1994, the Court warned Gale Winn that claiming lack of knowledge or recollection as to basic facts, clearly within her knowledge, could

---

7. The Court concluded that the costs were approximately $380. 3/8/94 PTC Tr. at 28.

result in a dismissal. 3/8/94 PTC Tr. at 14–23.

On March 24, 1994, defendants resumed the deposition of Gale Winn. Despite the warnings of the Court, Gale Winn did not recall numerous matters which she surely should be expected to know. For example, Winn did not recall, *inter alia*, the board of directors for the MBVP in 1992, when the alleged defamation occurred, Winn Dep. at 827, the major sponsor which forwarded a copy of the articles to Gale Winn and requested a contractual release, *id.* at 973–76, any major sponsors of the MBVP in 1991–92, *id.* at 901, 911–12,[8] any sponsors who refused to perform their contractual obligations with the MBVP and the contracts in relation thereto, *id.* at 1021, any prospective contestants or sponsors which refused to conduct business with the MBVP, *id.* at 957–62, any individuals, other than Gale Winn, authorized to sign contractual agreements, *id.* at 979–81, any individuals involved in the decision to cancel the pageants in 1993, *id.* at 915, or the sources of the gross receipts of the MBVP, *id.* at 983.

In addition, plaintiffs failed to comply with document discovery in accordance with an order of the Court. At the initial pre-trial conference on December 2, 1992, the Court ordered the parties to simultaneously exchange certain documents, including the articles underlying the instant action. Soyster Aff. ¶ 28. Without any advanced notice, however, Franshone Winn failed to appear for the scheduled exchange of documents. *Id.* ¶ 29. On March 31, 1993, the Court held a pre-trial conference at which Winn failed to appear. *Id.* ¶ 30. On April 16, 1993, the Court held another pre-trial conference. *Id.* ¶¶ 30–31. At that conference, the Court again directed plaintiffs to produce the specified documents. Soyster Aff. ¶ 31. On April 26, 1993, plaintiffs produced a single document, which was not even an AP news report. *Id.* ¶ 32.

Nor was this plaintiffs' only failure to produce documents as ordered by the Court. On January 21, 1994, the Court held a pre-trial conference and directed plaintiffs to produce numerous documents within thirty days. Transcript of Pre–Trial Conference dated 1/21/94 at 6–15. Nonetheless, at her deposition on May 13, 1994, Gale Winn admitted that plaintiffs had not even attempted to locate numerous documents which were maintained by the MBVP, which had been requested by defendants and which, in many instances, were directed to be produced by the Court. Soyster Aff. ¶ 36; Winn Dep. 906–09, 912–13, 930–32.

On May 27, 1994, the Court held a pre-trial conference which coincided with the close of discovery. At that conference, Gale Winn repeatedly asserted that plaintiffs had complied with all outstanding discovery requests. Transcript of Pre–Trial Conference dated May 27, 1994 at 2, 5, 7. The Court again directed plaintiffs to produce all outstanding document requests within thirty days and warned that their failure to comply could result in dismissal. *Id.* at 6, 9. Following that conference, plaintiffs produced supplemental documents. Soyster Aff. ¶ 41.[9]

In view of the foregoing, the Court concludes that the aforesaid obstruction of discovery by plaintiffs and their counsel would be an adequate predicate for a dismissal with prejudice were not the case being dismissed on other grounds. It follows that a monetary sanction should be imposed upon plaintiffs and their counsel, Franshone Winn, for their repeated willful non-compliance with the discovery process.

Defendants seek sanctions in three respects. First, defendants seek attorneys' fees in the amount of $3,800.00 in connection with the six pre-trial conferences necessitated by plaintiffs' misconduct. Soyster Aff. ¶ 53. This figure represents ten hours billed at an hourly rate of $380.00 per hour. *Id.* Secondly, defendants seek attorneys' fees and costs in the amount of $13,868.82 in

8. While Gale Winn, at some point, finally identified some major sponsors, that testimony was given only after she was shown the 1992 MBVP journal by counsel for defendants, which identified those sponsors. Winn Dep. at 914.

9. At the time of the instant motion, plaintiffs still had not produced many documents which were maintained by the MBVP or Gale Winn. Soyster Aff. ¶¶ 42–48.

connection with the deposition of Gale Winn. *Id.* ¶ 54. This figure represents one-third of the total of thirty-two hours billed at an hourly rate of $380.00 per hour and $5,446.45 in court reporter fees. *Id.* Finally, defendants seek attorneys' fees and costs in connection with the instant motion. *Id.* ¶ 52. Plaintiffs have failed to address the amount of sanctions or their financial ability to pay sanctions.

In its discretion, the Court therefore awards defendants their attorneys' fees incurred in connection with the numerous pretrial conferences in the amount of $2,000.00 and attorneys' fees and costs in connection with the deposition of Gale Winn in the amount of $10,000.00. In addition, the Court awards defendants attorneys' fees and costs incurred in connection with the instant motion in an amount to be determined. To that end, defendants are hereby directed to submit an affidavit, detailing their attorneys' fees and costs in connection with the instant motion.

## CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment and motion for sanctions shall be and hereby are granted. Plaintiffs' cross-motions are denied in their entirety. Defendants are hereby directed to submit a proposed order within the next thirty days. The Clerk of the Court is hereby directed to enter appropriate judgment for defendants and close the above-captioned action.

It is **SO ORDERED.**