**Gale WINN, Plaintiff,**

v.

**UNITED PRESS INTERNATIONAL and Robert Kennedy, President, United Press International, Defendants.**

**Civil Action No. 93–1547(PLF).**

United States District Court, District of Columbia.

Aug. 30, 1996.

Defendants published a wire service report that plaintiff alleges included defamatory information about her and her corporation, Miss Black Virginia Pageant, Inc. ("MBVP"). Defendants have moved for summary judgment.

 Summary judgment is to be granted only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c), FED.R.CIV.P. Where the non-moving party has the burden of proof at trial, on summary judgment the moving party need only demonstrate the absence of evidence supporting the non-movant's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *American Fed'n of Gov't Employees v. Skinner*, 885 F.2d 884, 893–94 (D.C.Cir.1989), *cert. denied*, 495 U.S. 923, 110 S.Ct. 1960, 109 L.Ed.2d 321 (1990). The non-movant cannot rest solely upon her pleadings, but must set forth specific, probative facts showing that there is sufficient evidence to proceed to trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Id.* at 247–48, 106 S.Ct. at 2510 (emphasis in original).

Gale Winn, pro se.

George Raymond Clark, Reed, Smith, Shaw & McClay, Washington, DC, for defendants.

## OPINION

PAUL L. FRIEDMAN, District Judge.

Gale Winn brings this action *pro se* against United Press International ("UPI") and Robert Kennedy, the former President of UPI, alleging defamation, misrepresentation and tortious interference with contractual rights.

## I. FACTS

At the time this dispute arose plaintiff was president of MBVP, producer of the annual Miss Black Virginia and Future Miss Black Virginia Pageants. Compl. ¶¶ 1, 3. The pageants were held in Richmond, Virginia, from 1985 through 1991 and in Norfolk, Virginia, in 1992. Defs.' Mot.Ex. 15 at 33; Reply Ex. 61 at 20–21. Plaintiff was responsible for producing the pageants, promoting participants and winners, recruiting staff, auditioners, celebrity participants, advertisers and sponsors, soliciting scholarships and prizes and representing the pageants in the media. Pl.'s Opp'n Ex. P ¶ 6.

UPI collects news items and transmits them through its wire service to newspaper and broadcast clients. Defs.' Mot.Ex. 13, Deposition of Carolyn Click ("Click Dep. Tr.") at 10, 13–14. UPI obtains its stories both through original reporting and by re-publishing or "picking up" articles that appear in various newspapers. *Id.* at 10–11. Republished articles are generally edited or condensed prior to distribution over the wire. *Id.* In August, 1992, UPI's only news bureau in Virginia was a three- or four-employee Richmond office headed by Carolyn Click. *Id.* at 16–19.

On August 7, 1992, *The Virginian–Pilot,* a southeastern Virginia newspaper, published the story *Miss Black Virginia 1991 Calls Pageant "A Fraud,"* in which past contestants and sponsors criticized the pageant for failing to deliver promised prizes to winners, failing to properly recognize sponsors and generally conducting poor operations. Pl.'s Opp'n Ex. U; Defs.' Mot.Ex. 3 ("*Pilot* article"). Employees in UPI's Richmond bureau picked up the story, edited it and redistributed it over UPI's Virginia (and possibly Maryland) morning and afternoon news wires. Click Dep.Tr. at 32–40; *see* Pl.'s Opp'n Ex. B; Defs.' Mot.Ex. 2 ("UPI Article").

Plaintiff alleges that the UPI wire service article was defamatory, specifically with rega_d to the following statements:

> This year's Miss Black Virginia and Future Miss Black Virginia pageants were held in Norfolk after being moved from Richmond.... Critics said the pageant was moved from Richmond because of complaints on how it is run.

[Jacqueline] Brayboy [a former Miss Black Virginia] got $1000.00, no clothes and only recently got a confirmation of her plane ticket.

Miss Black Virginia 1990, Tamika Lamison, says she was constantly hit up for money to run the pageant, the paper reported, but she did not know where the money was going.

Tamika said ... that two years after winning she is still looking for the rest of her prize money.

She told the paper that she sent out 50 to 60 letters of complaint to businesses. Compl. ¶ 8.[1] Plaintiff also alleges intentional misrepresentation and tortious interference with contract. Compl. ¶¶ 13, 18. Plaintiff claims that she has been injured in her business and her reputation and prays for compensatory and punitive damages in excess of one million dollars.

## II. DEFAMATION

 The Supreme Court has held that "so long as they do not impose liability without fault, the States may define for themselves the appropriate standard of liability for a publisher or broadcaster of defamatory falsehood injurious to a private individual." *Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 347, 94 S.Ct. 2997, 3010, 41 L.Ed.2d 789 (1974). Because plaintiff is a citizen of the Commonwealth of Virginia, and all of the disputed actions and alleged injuries occurred in Virginia, the law of Virginia applies. The only other potential source of law is the District of Columbia, the principal place of business of UPI, but UPI acquiesces in the application of Virginia law. Defs.' Mot. at 14 n. 17.[2]

---

1. Plaintiff's complaint lists fourteen statements that allegedly are defamatory. Compl. ¶¶ 8, 12. There is no evidence in the record, however, that defendants published nine of those statements. *Compare* Compl. ¶¶ 8, 12 *with* UPI Article. In fact, the evidence demonstrates that many of the statements listed in plaintiff's complaint appeared in the original *Virginian–Pilot* article, but were not republished on the UPI wire. *See Pilot* Article; UPI Article.

2. Applying District of Columbia choice of law principles, *Bledsoe v. Crowley,* 849 F.2d 639, 641 (D.C.Cir.1988), the Court must "evaluate the governmental policies underlying the applicable laws and determine which jurisdiction's policy

would be most advanced by having its law applied to the facts of the case under review." *Hercules & Co. v. Shama Restaurant Corp.,* 566 A.2d 31, 40–41 (D.C.1989). Virginia has the strongest interest in protecting the reputations of its citizens and preserving the freedom of its press. *See Gazette, Inc. v. Harris,* 229 Va. 1, 325 S.E.2d 713, 725, *cert. denied sub nom. Fleming v. Moore,* 472 U.S. 1032, 105 S.Ct. 3513, 87 L.Ed.2d 643 *and cert. denied sub nom. Port Packet Corp. v. Lewis,* 473 U.S. 905, 105 S.Ct. 3528, 87 L.Ed.2d 653 (1985); *see also* RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 149 cmt. c (1969) (place of defamation is as important in choice of defamation law as location of injury is in case of

■ The Supreme Court of Virginia has established negligence as the standard of care for the recovery of compensatory damages in defamation cases involving private figure plaintiffs. *Gazette, Inc. v. Harris*, 229 Va. 1, 325 S.E.2d 713, 725, *cert. denied sub nom. Fleming v. Moore*, 472 U.S. 1032, 105 S.Ct. 3513, 87 L.Ed.2d 643 and *cert. denied sub nom. Port Packet Corp. v. Lewis*, 473 U.S. 905, 105 S.Ct. 3528, 87 L.Ed.2d 653 (1985).[3] Placing the burden on plaintiff to prove falsity, the court in *Harris* declared that "in an action brought by a private individual to recover actual, compensatory damages for a defamatory publication, the plaintiff may recover upon proof by a preponderance of the evidence that the publication was false, and that the defendant either knew it to be false, or believing it to be true, lacked reasonable grounds for such belief, or acted negligently in failing to ascertain the facts on which the publication was based." *Id.* at 724–25.[4]

### A. The Published Statements

■ The first question is whether the published statements were defamatory in nature. The Court therefore must determine whether, as a matter of law, "a reasonable and prudent editor should have anticipated that the words used [in the publication] contained an imputation necessarily harmful to reputation." *Gazette, Inc. v. Harris*, 325 S.E.2d at 724. Defamatory nature may be found "by inference, implication, or insinuation." *Id.* at 733 (quoting *Carwile v. Richmond Newspapers, Inc.*, 196 Va. 1, 82 S.E.2d 588, 591–92

(1954)). Defendants do not contest the defamatory nature of the published statements, and the Court will therefore assume it for the purpose of this decision. *See* Defs.' Mot. at 14, 16.[5]

■ In order to be actionable, a statement, either on its face or by inference in light of the allegations and supporting facts, also must be "of or concerning" the plaintiff. *Gazette, Inc. v. Harris*, 325 S.E.2d at 738–39 (deciding "of and concerning" issue as a question of fact). For a statement to be "of or concerning" an individual, it must be shown "that the publication was intended to refer to him and would be so understood by persons reading it who knew him." *Id.* In determining this issue, the Court should consider the publication as a whole, as well as its constituent parts. *Chapin v. Knight–Ridder, Inc.*, 993 F.2d 1087, 1098 (4th Cir.1993). Defendants assert that plaintiff is not mentioned by name in the statements and that the statements regard only the allegedly questionable business practices of her corporation, MBVP. Defs.' Mot. at 14. This argument, however, fails to consider the impact of the publication as a whole.

The article refers to plaintiff in its opening paragraph and later names her twice. *See* UPI Article. It twice states that plaintiff "is denying all charges," presumably in reference to allegations that the pageant was a "fraud" and a "rip-off." *Id.* In its fourth paragraph the article states that plaintiff "referred all questions to the board of directors ... without naming the directors so the pa-

---

injury to persons or tangible things). Furthermore, Virginia and District of Columbia defamation law are substantially identical. *Atkins v. Industrial Telecommunications Ass'n*, 660 A.2d 885, 888 (D.C.1995). Virginia also has the strongest interest in this case in protecting its own citizens from fraudulent misrepresentations and from interference with their contractual relations.

3. The parties differ on whether plaintiff is a public or a private figure and, therefore, on the appropriate standard of care to apply to defendants' publication of the wire service report. *See generally Gertz v. Robert Welch, Inc.*, 418 U.S. at 347, 94 S.Ct. at 3010. Applying the standard most favorable to the non-moving party, the Court will assume that plaintiff is a private figure.

4. In view of the Court's decision in this case, it need not address the more complex question of the burden of proof that applies to private figure plaintiffs seeking punitive damages. *See Philadelphia Newspapers, Inc. v. Hepps*, 475 U.S. 767, 773–75, 106 S.Ct. 1558, 1562–63, 89 L.Ed.2d 783 (1986).

5. Plaintiff and defendants do contest the defamatory nature of another published statement that was not referenced in the original complaint. Opp'n at 17–18; Reply at 4–6. The Court need not resolve this issue for present purposes and will assume that this statement is also defamatory.

per could contact them." *Id.* It refers to plaintiff as the "director" and the "executive director" of the pageant. *Id.* No other pageant employee is mentioned. Plaintiff has submitted evidence that her associates considered the article to be about her. Pl.'s Opp'n Exs. L, M, N, O. Viewed in its entirety, a reasonable jury could find that the article was "intended to refer to [plaintiff] and would be so understood by persons reading it who knew [her]." *Gazette, Inc. v. Harris,* 325 S.E.2d at 738.

### B. Defendants' Conduct

 Defendants next argue that they cannot be held liable because UPI merely republished a facially reasonable story from a reputable, reliable newspaper and that, in so doing, UPI was not negligent as a matter of law. Defs.' Mot. at 25. Although this assertion comports with the accepted common law standard of care for news gathering agencies that collect and disseminate information from other news sources, *see, e.g., Nelson v. Associated Press,* 667 F.Supp. 1468, 1476–77 (S.D.Fla.1987), the Virginia state courts have not directly addressed this question and therefore have neither accepted nor rejected this rationale.[6]

Two federal district courts, purporting to apply Virginia law, however, have spoken to the question and both have adopted the rule that a wire service agency is not negligent as a matter of law when it republishes on its wire a local news article that does not "suggest[ ] a factual error or the need for further investigation." *Holden v. Clary,* 1992 WL 373145, at *4; *see Winn v. Associated Press,* 903 F.Supp. 575, 580 (S.D.N.Y.1995) ("*Winn I*"). In *Holden v. Clary,* the United States District Court for the Eastern District of Virginia concluded that an agency that picked up, revised and disseminated an article stating that a plaintiff was a "former attorney," when in fact she was a member in good standing of the Bar, did not act negligently by failing to check whether she had actually been disbarred. 1992 WL 373145, at *4. Observing that "[t]he [Associated Press] is charged with the prompt and efficient transmission of news ... [and] cannot be expected to research the minute details of every story that passes over their wires, unless they have reason to [do so]," the court held that the article's original reporter and periodical, not the AP, bore the primary responsibility for proper research. *Id.*

In a decision involving the plaintiff in this case, the United States District Court for the Southern District of New York, applying Virginia law, found that the Associated Press was not negligent as a matter of law for republishing the very same pageant story that UPI republished here. *Winn I,* 903 F.Supp. at 580. Noting the solid reputation of the *Virginian–Pilot* and crediting the Associated Press editor's conclusion that the original article was "thoroughly researched, fairly presented, neither improbable nor implausible and suggested no factual errors warranting further investigation," the court held that there was no basis on which a jury could find that the wire service agency had been negligent in publishing the story. *Id.* "[T]he wire service defense is available where, as here, a news organization reproduces an apparently accurate article by a reputable publisher, without actual knowledge of its falsity." *Id.* at 579.

Several other courts have adopted this same rationale. The North Carolina Court of Appeals ruled that a newspaper editor who published an article incorporating potentially defamatory information from "reputable wire services and daily newspapers" was not negligent as a matter of law because "[t]here was nothing inconsistent or improbable in the articles upon which [the defendant] relied which should have prompted her to investigate the reliability of the stories." *McKin-*

---

**6.** Defendants refer to this standard of care as the "wire service defense," originally articulated as a standard for newspapers that republish articles received *from* wire service agencies. Defs.' Mot. at 27 n. 29; *see Appleby v. Daily Hampshire Gazette,* 395 Mass. 32, 478 N.E.2d 721, 725 (1985) (collecting cases). As courts have adapted this rationale to broader instances of this type of newsgathering, some have recognized that it defines a general standard of care rather than a distinct or affirmative defense. *See O'Brien v. Williamson Daily News,* 735 F.Supp. 218, 220 (E.D.Ky.1990), *aff'd* 931 F.2d 893 (6th Cir.1991); *Holden v. Clary,* No. CIV. A. 92–313, 1992 WL 373145, at *5 n. 4 (E.D.Va. Sept. 17, 1992).

ney v. Avery Journal, Inc., 99 N.C.App. 529, 393 S.E.2d 295, 297 (1990). A federal court in Florida held that *Newsweek* magazine was not negligent as a matter of law when it republished arguably defamatory information that it had obtained from reports in *The Washington Post, The New York Daily News, The Miami Herald* and *The Palm Beach Daily News. Nelson v. Associated Press*, 667 F.Supp. at 1475–77. Recognizing the cost and logistical burden of verifying the authenticity of every news item and the public's need for prompt dissemination of the news, the court held that "absent a showing that [it is] negligent or careless in condensing or summarizing other sources of news information," a periodical that relies on articles from other reliable publications is not negligent as a matter of law when it does not verify those articles with their original sources. *Id.* at 1477; *cf. Mehau v. Gannett Pacific Corp.*, 66 Haw. 133, 658 P.2d 312, 321–22 (1983) (wire service not entitled to summary judgment on question of malice where source of article was "a new publication apparently given to sensationalizing the news" and where the service "strung together" quotes so as to implicate plaintiff in criminal activity "by innuendo and inference").[7]

As in *Winn I*, the defendants here have presented evidence that UPI did not write the original pageant article but picked it up from the *Virginian–Pilot.* Click Dep.Tr. at 32–33, 36; Reply Ex. 62. The head of UPI's Richmond office testified that UPI contributed no original reporting to the story, but merely "condense[d] it down, pick[ed] out the ... highlights, [and] chang[ed] the lead a little bit" prior to distributing it over the news wire. Click Dep.Tr. at 38–45; *compare* UPI Article *with Pilot* Article. Plaintiff ve-

hemently contests this assertion, but she has submitted no probative evidence to support her argument. Pl.'s Opp'n at 13, 17. The two articles that plaintiff does submit on this point do not even refer to her organization. *See* Pl.'s Ex. T (article relating criticism of the Miss Black America Pageant); Pl.'s Ex. Y (two articles concerning Mike Tyson's trial for allegedly raping a contestant at the Miss Black America Pageant); *see also* Reply at 21 n. 26.

At the time she picked up the *Virginian– Pilot* story, UPI's Virginia state editor had no reason to believe that the story was not reliable. Click Dep.Tr. at 44, 46–52. Competing wire service employees who handled the same story attest that they also considered it to be "thoroughly researched and fairly presented" and saw no indication that further investigation might be necessary. Defs.' Mot.Ex. 17 ("Taylor Aff.") ¶ 9; Defs.' Mot.Ex. 18 ("Petkofsky Aff.") ¶ 5. Plaintiff submits no probative evidence contesting this point. The UPI editor considered the *Virginian–Pilot* to be a reputable, reliable news source that employed "reporters who knew what they were doing ... [and] editors who were obviously paying attention to what went into the body of a newspaper affecting their community." Click Dep.Tr. at 40–42. In addition, the UPI editors had republished *Virginian–Pilot* articles on numerous prior occasions without complaint. *Id.* Employees of competing wire services agree that the newspaper is well-established, has "an excellent reputation for accuracy" and employs "careful and responsible journalists." Taylor Aff. ¶ 6; Petkofsky Aff. ¶ 4.

On a motion for summary judgment, the non-moving party may not rest upon mere allegations or denials, but must "set forth

---

7. While not directly relevant, our court of appeals has addressed the issue of republication in the context of public figures/actual malice cases. In *Washington Post Co. v. Keogh*, 365 F.2d 965, 972 (D.C.Cir.1966), *cert. denied*, 385 U.S. 1011, 87 S.Ct. 708, 17 L.Ed.2d 548 (1967), it held that a newspaper did not act with actual malice when it published, without verification, a syndicated column that accused a public figure of accepting bribes. Warning about the detrimental effect of time-consuming and costly verification on the free exercise of the press, the court declined to establish "a rule requiring verification in the

absence of evidence that the publisher had good reason to suspect falsity." *Id.* at 972–73. Later, in *Waskow v. Associated Press*, 462 F.2d 1173, 1174–76 (D.C.Cir.1972), the court declared that a wire service employee who mistakenly identified a public figure as having been convicted of a crime in a story that he picked up from a local newspaper, rewrote and distributed over a news wire did not, as a matter of law, act with actual malice. Both decisions reserved judgment on whether such action was negligent. *Waskow v. Associated Press*, 462 F.2d at 1175; *Washington Post v. Keogh*, 365 F.2d at 971.

specific facts showing that there is a genuine issue for trial." Rule 56(e), FED.R.CIV.P.; *see Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 248–50, 106 S.Ct. at 2510–11. Because plaintiff has presented no evidence to suggest that defendants did not act with due care by picking up and republishing this story, she has failed to raise a genuine issue of material fact as to defendants' conduct. Defendants therefore are entitled to judgment as a matter of law.

## III. FRAUDULENT MISREPRESENTATION

 Plaintiff also alleges that by publishing its article UPI committed intentional misrepresentation or fraud. Compl. ¶ 13. This claim misconstrues the tort. The elements of fraudulent misrepresentation under Virginia law are "(1) a false representation, (2) of a material fact, (3) made intentionally and knowingly, (4) with intent to mislead, (5) reliance by the party misled, and (6) resulting damage *to the party misled." Spence v. Griffin,* 236 Va. 21, 372 S.E.2d 595, 598 (1988) (emphasis added). Plaintiff asserts that the alleged defamatory statements were relied upon by the general public not to the public's detriment, but to the detriment of plaintiff. Compl. ¶ 13. Even assuming the dubious proposition that plaintiff has standing to assert a claim for an injury inflicted on the general public, she has offered no evidence that such damage has occurred. Plaintiff therefore has failed to state a claim.

## IV. TORTIOUS INTERFERENCE

Plaintiff also claims that defendants tortiously interfered with her or MBVP's contracts with "past [pageant] winners, sponsors, and reigning winners" by publishing the pageant article. Compl. ¶ 18. To establish a *prima facie* case of tortious interference with contractual rights under Virginia law, a plaintiff must show: "(1) the existence of a valid contractual relationship or business expectancy; (2) knowledge of the relationship or expectancy on the part of the interferer; (3) intentional interference inducing or causing a breach or termination of the relationship or expectancy; and (4) resultant damage to the party whose relationship or expectancy

has been disrupted." *Chaves v. Johnson,* 230 Va. 112, 335 S.E.2d 97, 102 (1985).

Plaintiff provides no evidence of contracts or expectancies that defendants have interfered with, much less of knowledge of such contracts on the part of defendants or of the breach of such contracts. Because she again may not rest upon mere allegations to survive a motion for summary judgment, plaintiff has failed to establish a genuine issue for trial and defendants are entitled to judgment as a matter of law.

## V. CONCLUSION

The Court has considered the motion, the opposition, supporting and opposing affidavits and other submissions by the parties and finds that there is no genuine issue of material fact as to plaintiff's claims for defamation and for tortious interference with contractual rights and that plaintiff's allegation of fraud fails to state a claim upon which relief can be granted. Defendants therefore are entitled to judgment as a matter of law. An Order consistent with this Opinion will be issued this same day.

SO ORDERED.