Gray v. St. Martins Press          CV-95-285-M    03/05/98

UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE


Robert K. Gray,
     Plaintiff,

     v.                                    Civil No. 95-285-M

St. Martin's Press, Inc.,
and Susan Trento,
     Defendants.


O R D E R


     Plaintiff, Robert Gray, brings this action against

St. Martin's Press and Susan Trento, seeking damages for

allegedly defamatory statements contained in The Power House,

Robert Keith Gray and the Selling of Access and Influence in

Washington ("The Power House"), a book authored by Trento and

published by St. Martin's.  The court has jurisdiction over

Gray's claims pursuant to 28 U.S.C. § 1332.


     St. Martin's has moved for summary judgment, asserting that

there are no genuine issues of material fact and it is entitled

to judgment as a matter of law.  Specifically, it claims that:

(1) Gray is a public figure and cannot prove by clear and

convincing evidence that St. Martin's published the allegedly

defamatory statements with knowledge of their falsity or serious

doubts as to their truth; and (2) seven of the eight allegedly

defamatory statements are protected opinions.  Gray objects.

## I.    FACTUAL BACKGROUND

Early in his career, Gray worked in President Eisenhower's administration, acting as Secretary of the Cabinet, Appointments Secretary to the President, and finally as Special Assistant to the President.  In 1962, he authored a book about his experiences in the White House, entitled <u>Eighteen Acres Under Glass</u>. Subsequently, Gray was employed as director of the Washington, D.C. office of Hill and Knowlton, Inc., a public relations and lobbying firm.  In 1981, he founded Gray and Company Public Communications, International ("G&C").  In 1986, Gray sold his company to Hill and Knowlton and, until 1993, acted as Hill and Knowlton's chairman and chief executive officer.

In support of its claim that Gray is a "public figure," St. Martin's submitted copies of several articles published about Gray and his career in Washington, particularly as a lobbyist. Included are articles from <u>U.S. News & World Report</u>, <u>Time</u>, <u>The New York Times</u>, <u>Forbes</u>, and <u>The Washington Post</u>.  St. Martin's has also submitted a list of over 400 newspaper and magazine articles which purportedly concern or relate to Gray and his activities as a Washington lobbyist.  Gray himself concedes that he has "a national reputation in the area of public relations." Gray Affidavit at para. 3.

In January of 1990, Gray read a portion of Trento's book proposal.[1] The proposal apparently opened with the assertion that, "The story of Robert Keith Gray is a metaphor for the corruption of power in Washington." Memorandum in opposition to summary judgment, at p. 15. Gray notified both Trento and St. Martin's that, in his opinion, the proposal contained numerous inaccuracies which defamed both him and others, including Sarah Brady, William Casey, and J. Edgar Hoover. Approximately six months later, Gray provided a detailed specification of each statement which he viewed as false and/or defamatory. Gray claims to have provided Trento with several sources which contradicted or, at a minimum, called into question the veracity of many of the statements set forth in Trento's book proposal. Memorandum in opposition to summary judgment, at p. 17. St. Martin's, on the other hand, says that "[n]either Mr. Baine [Gray's legal counsel] nor Mr. Gray ever provided any evidence or documentation that the contents of the proposal were

---

[1] Statements in Trento's book proposal are not directly at issue in this litigation. Nevertheless, Gray suggests that they illustrate Trento's generally sloppy research as well as her tendency to disregard the truth when necessary to generate a sensational story. Gray argues that because he specifically notified St. Martin's that the book proposal contained numerous false statements and fabrications, it should have recognized that the final version of The Power House likely contained such elements. He claims that despite such knowledge, St. Martin's failed to take reasonable steps to verify the accuracy of Trento's claims. Gray also claims that Trento's husband, Joseph Trento, contributed substantially to The Power House. Gray says that because Mr. Trento was a "highly questionable" author, whose reporting had been repeatedly questioned in the media as being less-than accurate, St. Martin's should have undertaken even greater efforts to confirm the veracity of the statements made in The Power House.

in any respect inaccurate."  Memorandum in support of summary
judgment, at p. 11.


In July of 1992, St. Martin's published <u>The Power House</u>.
Gray claims that eight statements contained in the book defame
him.  Those statements, the subject of this litigation, are as
follows:

a.  "As others were cleaning out their desks, looking for jobs, briefing their successors, and preparing to leave the White House, Gray was busy dictating his memoirs to his White House Secretary."  <u>The Power House</u>, p. 53.

b.  "A senior Gray and Company executive insisted that Gray's closeness to the President [Ronald Reagan] and others was often faked.  'He completely faked his closeness with a number of senior administration officials.'"  <u>The Power House</u>, p. 156.

c.  "'I [a Gray and Company Senior Vice President] think there's a degree of venality on the part of Bob and a lack of integrity which always took me aback.  A lot of it he would justify as being a businessman, but there was very little real basic principle and an awful lot, to me, of overcharging.'"  <u>The Power House</u>, p. 165.

d.  "'. . . at Gray and Company he [Gray] stage-managed impressive-sounding calls.  A reporter would walk in and he would instruct his executive assistant to come in and announce that there was a call from the White House.  Totally fabricated. Absolutely.  They would come in and they would say, "Mr. Gray, Mr. Meese is on the phone," and he would pick up a dead line or a line that was set up by the executive assistant, carry on a conversation of four or five short rapid sentences as though he was in constant communication and hang up. And then, of course, the reporters, dazzled, would then report that a White House phone call came in,' explained one Gray and Company executive."  <u>The Power House</u>, p. 167-68.

e.  "And the Gray and Company employees in Spain were to be convinced that the office was being used as a money laundering operation for the Reagan administration's

private intelligence network." <u>The Power House</u>,
p. 273.

f.   "In the end, several Washington lobbyists feel that
     Gray and Company ultimately failed because it offered
     very little real substance." <u>The Power House</u>, p. 32.

g.   "One Gray and Company executive in a position to know
     said that Gray and Company was making payments to
     Zeller." <u>The Power House</u>, p. 202.

h.   "Robert Crowley believed that 'Casey may have asked
     Gray to take on these controversial clients – for the
     very purpose of spying on them.' If that were so it
     would explain why Gray considered countries like Libya,
     and took clients like Angola." <u>The Power House</u>,
     p. 260.

Complaint, paras. 11(a)-(h).

## Standard of Review

Summary judgment is appropriate when the record reveals "no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In ruling upon a party's motion for summary judgment, the court must "view the entire record in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor." <u>Griggs-Ryan v. Smith</u>, 904 F.2d 112, 115 (1st Cir. 1990).

The moving party has the burden of demonstrating the absence of a genuine issue of material fact for trial. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 256 (1986). If the moving party carries its burden, the party opposing the motion must set forth specific facts showing that there remains a genuine issue for trial, demonstrating "some factual disagreement sufficient to

deflect _brevis_ disposition."  _Mesnick v. General Electric Co._,
950 F.2d 816, 822 (1st Cir. 1991).  _See_ _also_ Fed. R. Civ. P.
56(e).  That burden is discharged only if the cited disagreement
relates to a genuine issue of material fact.  _Wynne v. Tufts_
_University School of Medicine_, 976 F.2d 791, 794 (1st Cir. 1992).
"Generally speaking, a fact is 'material' if it potentially
affects the outcome of the suit and a dispute over it is
'genuine' if the parties' positions on the issue are supported by
conflicting evidence."  _Intern'l Assoc'n of Machinists and_
_Aerospace Workers v. Winship Green Nursing Center_, 103 F.3d 196,
199-200 (1st Cir. 1996) (citations omitted).

Here, provided the court concludes that Gray is a limited
public figure, the inquiry into "whether a genuine issue exists
will be whether the evidence presented is such that a jury
applying [the clear and convincing] evidentiary standard could
reasonably find for either the plaintiff or the defendant."
_Anderson_, 477 U.S. at 255.  In other words, the question
presented at this stage of the litigation is "whether the
evidence in the record could support a reasonable jury finding
either that the plaintiff has shown actual malice by clear and
convincing evidence or that the plaintiff has not."  _Id._, at 255-
56.

6

**Discussion**

St. Martin's moves for summary judgment on two grounds. First, it claims that Gray is a limited public figure and, therefore, in order to prevail, must demonstrate that St. Martin's acted with actual malice in publishing the allegedly defamatory remarks. St. Martin's claims, as a matter of law, that Gray cannot carry that burden. Accordingly, it says it is entitled to judgment as a matter of law. Alternatively, St. Martin's moves for partial summary judgment, claiming that seven of the eight statements at issue in this case are non-actionable opinions, which are incapable of being verified as either true or false.

I.   Defamation and the Limited Purpose Public Figure.

To prevail at trial on his defamation claim, Gray must establish that defendants failed to exercise reasonable care in publishing, without a valid privilege, false and defamatory statements of fact about him. See Indep. Mechanical Contractors, Inc. v. Gordon T. Burke & Sons, 138 N.H. 110, 118 (1993); Nash v. Keene Publishing Corp., 127 N.H. 214, 219 (1985). To the extent he is a public figure, Gray's burden is augmented because, under the First Amendment, defamatory statements concerning a "public figure" are only actionable if they were made with "actual malice." Actual malice is either knowledge that the statements in question were false or a reckless disregard for whether they

7

were false or not.  <u>New York times v. Sullivan</u>, 376 U.S. 254, 279-80 (1964).

This court (Devine, J.) recently addressed the legal concept of the "public figure" and observed:

> The designation "public figure" may rest on two alternative bases.  First, in some instances, an individual may achieve such pervasive fame or notoriety that he becomes a public figure for all purposes and in all contexts.  Second, persons of lesser fame may nonetheless qualify as limited public figures if they "thrust themselves to the forefront of particular public controversies."  Such limited public figures are subject to the "actual malice" standard only for defamation arising out of the public controversy into which they have thrust themselves.

<u>Faigin v. Kelly</u>, 978 F.Supp. 420, 426 (D.N.H. 1997) (citations omitted).  Here, St. Martin's claims that Gray is a limited public figure insofar as: (1) there is a "public controversy" concerning Washington lobbyists; and (2) Gray purposefully thrust himself into that public controversy.

Whether an individual is a limited public figure presents a question of law.[2]  Resolution of that issue, however, requires "a

---

[2]  Under New Hampshire's law of defamation, "the determination of public official or public figure status is a jury question."  <u>Nash v. Keene Publishing Corp.</u>, 127 N.H. 214, 222 (1985).  However, because Gray elected to bring his claims in federal court, federal law, rather than state law, governs resolution of this issue.  And, "[u]nder federal law, the public official and public figure questions are ones for the court."  <u>Kassell v. Gannett Co.</u>, 15 Med. L. Rep. 1205, 1206 (1st Cir. 1988).  <u>See also</u> <u>Marshall v. Perez Arzuaga</u>, 828 F.2d 845, 849 (1st Cir. 1987) ("[I]t is federal law that must control the division of responsibility between judge and jury . . ..").

detailed fact-sensitive determination." Penobscot Indian Nation v. Key Bank of Maine, 112 F.3d 538, 561 (1st Cir.), cert. denied, 118 S.Ct. 297 (1997). First, the court must determine whether a "public controversy" actually existed. Then it must consider whether "the nature and extent of the person's participation in the controversy reached some critical mass at which 'voluntary injection' occurred." Id., at 561-62 (quoting Lawrence H. Tribe, American Constitutional Law § 12-13, at 880-81 (2d ed. 1988)).

Nevertheless, even assuming that Gray is a limited public figure and must prove, by clear and convincing evidence, that St. Martin's acted with actual malice, genuine issues of material fact preclude the entry of summary judgment in favor of St. Martin's. As the court of appeals for this circuit has noted:

> The subjective determination of whether [a defamation defendant] in fact entertained serious doubts as to the truth of the statement may be proved by inference, as it would be rare for a defendant to admit such doubts. A court typically will infer actual malice from objective facts. These facts should provide evidence of negligence, motive, and intent such that an accumulation of the evidence and appropriate inferences support[] the existence of actual malice.

Bose Corp. v. Consumers Union of United States, Inc., 692 F.2d 189, 196 (1st Cir. 1982). Here, the facts of record and the reasonable inferences which can be drawn from them support Gray's claim that St. Martin's acted with actual malice. At a minimum, they are sufficient to preclude the entry of summary judgment in favor of St. Martin's.

Among other things, Gray asserts that neither Trento nor St. Martin's has provided a list of all sources for the statements at issue. Without access to those purportedly confidential sources and a detailed account of the information which they allegedly provided to Trento and/or St. Martin's, the court cannot conclude, as a matter of law, that St. Martin's acted without malice. Moreover, in light of the evidence submitted by Gray which calls into question the accuracy and thoroughness of Trento's research (e.g., the book proposal and its numerous allegedly false, fabricated, and/or defamatory statements; Gray's detailed analysis of Trento's claimed sources for the statements at issue and cogent discussion of why those sources do not support the allegedly defamatory comments in The Power House; etc.), a jury might reasonably conclude that St. Martin's had good reason to doubt the accuracy of Trento's reporting and, therefore, should have taken additional steps to corroborate her claims. See, e.g., McFarlane v. Sheridan Square Press, Inc., 91 F.3d 1501, 1510 (D.C. Cir. 1996) ("[I]f a defendant has reason to doubt the veracity of its source, then its utter failure to examine evidence within easy reach or to make obvious contacts in an effort to confirm a story would be evidence of its reckless disregard.").

Based upon the record as it presently exists, a reasonable trier of fact could conclude that: (1) one or more of the statements at issue was false; and (2) St. Martin's acted with

10

knowledge of the falsity, or with reckless disregard as to the truth or falsity, of such statement(s). Consequently, on that issue at least, St. Martin's is not entitled to judgment as a matter of law.

II. Protected Expressions of Opinion.

The Supreme Court has recognized that, "[u]nder the First Amendment there is no such thing as a false idea. However pernicious an opinion may seem, we depend for its correction not on the conscience of judges and juries but on the competition of other ideas." Gertz v. Robert Welch, Inc., 418 U.S. 323, 339-40 (1974). Subsequently, the Court of Appeals for the First Circuit observed that:

> The doctrine of constitutionally protected opinion is an attempt to reconcile the conflict between defamation law, which has as a major purpose the compensation of individuals for speech that harms them, and the first amendment, which has among its purposes the protection of free speech.

McCabe v. Rattiner, 814 F.2d 839, 841 (1st Cir. 1987).

Nevertheless, while some constitutional protection is afforded to "opinions," that protection is not unbounded.

> [W]e do not think this passage from Gertz was intended to create a wholesale defamation exemption for anything that might be labeled "opinion." Not only would such an interpretation be contrary to the tenor and context of the passage, but it would also ignore the fact that expressions of "opinion" may often imply an assertion of objective fact.

11

If a speaker says, "In my opinion John Jones is a liar," he implies a knowledge of facts which lead to the conclusion that Jones told an untruth. Even if the speaker states the facts upon which he bases his opinion, if those facts are either incorrect or incomplete, or if his assessment of them is erroneous, the statement may still imply a false assertion of fact. Simply couching such statements in terms of opinion does not dispel these implications; and the statement, "In my opinion Jones is a liar," can cause as much damage to reputation as the statement, "Jones is a liar." As Judge Friendly aptly stated: "[It] would be destructive of the law of libel if a writer could escape liability for accusations of [defamatory conduct] simply by using, explicitly or implicitly, the words 'I think.'"

Milkovich v. Lorain Journal Co., 497 U.S. 1, 18-19 (1990). See also Levinsky's v. Wal-Mart Stores, Inc., 127 F.3d 122, 127-28 (1st Cir. 1997) ("The First Amendment does not inoculate all opinions against the ravages of defamation suits. A statement couched as an opinion that presents or implies the existence of facts which are capable of being proven true or false can be actionable.").

Numerous courts have wrestled with this "fact-opinion" dichotomy. In an effort to assist trial courts in their efforts to resolve that issue, Chief Judge Posner of the Court of Appeals for the Seventh Circuit has opined that:

A statement of fact is not shielded from an action for defamation by being prefaced with the words 'in my opinion,' but if it is plain that the speaker is expressing a subjective view, an interpretation, a theory, conjecture, or surmise, rather than claiming to be in possession of objectively verifiable facts, the statement is not actionable.

12

<u>Haynes v. Alfred A. Knopf, Inc.</u>, 8 F.3d 1222, 1227 (7th Cir. 1993). Nevertheless, the question over how best to separate actionable statements from mere opinions has been, and likely will continue to be, a topic of debate. <u>Compare</u> <u>Lewis v. Time, Inc.</u>, 710 F.2d 549, 553 (9th Cir. 1983) ("three factors [are] important in determining whether a statement is [one of] fact or opinion") <u>with</u> <u>Ollman v. Evans</u>, 750 F.2d 970, 979 (D.C. Cir. 1984) (utilizing four factors in the same analysis).

This circuit appears to have adopted the multi-factor analysis articulated by Court of Appeals for the District of Columbia in <u>Ollman</u>. <u>See</u> <u>Phantom Touring, Inc. v. Affiliated Publications</u>, 953 F.2d 724, 727 (1st Cir. 1992); <u>McCabe v. Rattiner</u>, 814 F.2d at 842. It has also specifically adopted Chief Judge Posner's analysis, noting that it "capture[s] the distinction between statements that are actionable and those that are not." <u>Levinsky's</u>, 127 F.3d at 127.

Against that backdrop, St. Martin's claims that statements (b), (c), (e), (f), and (h) are not actionable because they are not the type of factual statements that can be proved false. Defendant's memorandum at p. 45. With regard to statements (b), (f), and (h), St. Martin's is correct; as a matter of law, those statements are not actionable. Among other things, they contain language that makes it clear that they are speculative expressions of opinion (e.g., "Crowley believed" and "if that

13

were so"). Moreover, statement (f) contains language ("offered very little real substance") which, by its vague and ambiguous nature, does not lend itself to proof as being either true or false. See generally Milkovich v. Lorain Journal Co., 497 U.S. at 17 (recognizing that "rhetorical hyperbole" and "imaginative expression" are not normally actionable); Levinsky's, 127 F.3d at 129 ("a particular word or phrase ordinarily cannot be defamatory unless in a given context it reasonably can be understood as having an easily ascertainable and objectively verifiable meaning. The vaguer a term, or the more meanings it reasonably can convey, the less likely it is to be actionable."). The same is true with regard to statement (b) (Gray "faked his closeness" with President Reagan). See, e.g., Phantom Touring, 953 F.2d at 728 (holding that the words "fake" and "phony" are unprovable adjectives, which lend themselves to numerous interpretations).

In the end, no reasonable trier of fact could conclude that any of those statements implies a defamatory statement of fact. Accordingly, St. Martin's is entitled to summary judgment with regard to statements (b), (f), and (h). The remaining statements could reasonably be interpreted to imply false assertions of fact (e.g., that Gray overcharged clients, that the Spain office of G&C was a money laundering operation, etc.). Consequently, St. Martin's is not entitled to judgment as a matter of law with regard to Gray's claims as to those statements.

14

III. Statements "of or Concerning" Gray.

Finally, St. Martin's claims that statements (e), (f), and (g) refer only to the corporate entity G&C and not to Gray personally. Accordingly, it says that Gray cannot recover for those allegedly defamatory statements. Having previously ruled that statement (f) is not actionable, the court will address only statements (e) and (g).

St. Martin's correctly points out that, to be actionable, the alleged defamatory statements must be "of or concerning" Gray. See, e.g., Indep. Mechanical Contractors, 138 N.H. at 118; Keene Publishing Corp., 127 N.H. at 219. However, it erroneously concludes that statements about G&C cannot, as a matter of law, defame Gray. Even though statements (e) and (g) do not specifically refer to Gray, he may prevail if a reader of The Power House would, based upon his or her understanding of Gray's role in G&C, reasonably believe that those statements refer to him. See Restatement (Second) of Torts, § 564A. See also Caudle v. Thomason, 942 F.Supp. 635, 638 (D.D.C. 1996); Winn v. United Press International, 938 F.Supp. 39, 43-44 (D.D.C. 1996).

During the periods referenced in comments (e) and (g), Gray was the chairman of G&C. Based upon Gray's substantial role in the corporation, the court cannot conclude, as a matter of law, that a reasonable reader of The Power House would not infer that

15

Gray was responsible for or involved in the conduct referenced in those comments.

## Conclusion

For the foregoing reasons, St. Martin's motion for summary judgment (document no. 93) is granted in part and denied in part. St. Martin's is entitled to judgment as a matter of law with regard to Gray's claims as to statements (b), (f), and (h), as alleged in paragraph 11 of plaintiff's complaint. In all other respects, St. Martin's motion is denied.


**SO ORDERED.**


_____
Steven J. McAuliffe
United States District Judge

March 5, 1998

cc:  James G. Walker, Esq.
     Mark D. Balzli, Esq.
     Cletus P. Lyman, Esq.
     William L. Chapman, Esq.